**Woodrow TAYLOR, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 49A02–0410–CR–898.**

Court of Appeals of Indiana.

Nov. 10, 2005.

Transfer Denied Jan. 11, 2006.

Steve Carter, Attorney General of Indiana, James T. Whitehead, Jr., Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

SHARPNACK, Judge.

Woodrow Taylor appeals his conviction for criminal trespass as a class A misdemeanor.[1] Taylor raises one issue, which we restate as whether the evidence is sufficient to sustain Taylor's conviction. We affirm.

The relevant facts follow. On March 11, 2004, Taylor attended classes at IPS School 26 in Indianapolis, pursuant to his class schedule, from 8:15 to 10:15 a.m. Around noon, Indianapolis Public School Police Officer Thomas McClendon saw Taylor standing in the hallway by the front entry. Officer McClendon asked Taylor what he was doing, and Taylor told the officer he was waiting for the city bus. Officer McClendon told Taylor it was fine as long as he waited in the hallway by the front entry.

While patrolling the school, Officer McClendon saw Taylor walking around in the building on two separate occasions. After his patrol ended, Officer McClendon waited for Taylor at the front entry. When Taylor returned, Officer McClendon told him to leave the building, repeating himself five times in quick succession. Taylor responded, "[y]ou must be hard of hearing," and "[I am] not leaving the building." Transcript at 9. Officer McClendon then placed Taylor under arrest.

The State charged Taylor with trespass as a class D felony.[2] After a bench trial, the trial court found Taylor guilty but

Michael C. Borschel, Indianapolis, for Appellant.

1. Ind.Code § 35–43–2–2 (2004).

2. Ind.Code § 35–43–2–2 (2004).

reduced the conviction to a class A misdemeanor pursuant to the alternative misdemeanor sentencing provisions. The trial court sentenced Taylor to serve 180 days on probation. Taylor filed a motion to reconsider, which the trial court denied.

■■■■ The sole issue is whether the evidence is sufficient to sustain Taylor's conviction. When reviewing claims of insufficiency of the evidence, we do not reweigh the evidence or judge the credibility of witnesses. *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995), *reh'g denied.* Rather, we look to the evidence and the reasonable inferences therefrom that support the conviction. *Id.* We will affirm the conviction if there exists evidence of probative value from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *Id.*

The offense of criminal trespass is governed by Ind.Code § 35–43–2–2, which provides, in pertinent part: "A person who . . . not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent . . . commits criminal trespass, a Class A misdemeanor. However, the offense is a Class D felony if it is committed . . . on school property." Thus, to convict Taylor of criminal trespass as a class D felony, the State needed to prove that Taylor: (1) did not have a contractual interest in the property; (2) knowingly or intentionally refused to leave the real property of another person; (3) after having been asked to leave by the other person's agent; and (4) the offense is committed on school property.

■■■■ Taylor argues that the evidence is insufficient to support his conviction because he had a contractual interest in remaining on the school property. A "contractual interest," as it is used in the criminal trespass statute, refers to the right to be present on another's property, arising out of an agreement between at least two parties that creates an obligation to do or not to do a particular thing. *A.E.B. v. State*, 756 N.E.2d 536, 540 (Ind. Ct.App.2001) (relying on *Woods v. State*, 703 N.E.2d 1115, 1117 (Ind.Ct.App.1998)). The State is not required to disprove every conceivable contractual interest the defendant might have had in the property. *Fleck v. State*, 508 N.E.2d 539, 541 (Ind. 1987).

At trial, the State presented the following evidence regarding the lack of a contractual interest. The following exchange occurred between the prosecutor and Officer McClendon:

Q. Okay. Did Mr. Taylor pay rent to the school or did he have any contractual interest in that property that you know of?

A. Not that I know of.

[Defendant's Attorney]: Objection as to . . .

A. No, sir.

Q. Okay.

[Defendant's Attorney]: Strike that?

THE COURT: Objection stricken.

Q. Is part of your job to make sure that people aren't hanging around the school that aren't supposed to be there?

A. Yes, sir.

Q. And is Mr. Taylor one of those people that was hanging around where he wasn't supposed to be?

A. Yes, sir.

Transcript at 9–10. Further, the record shows that Taylor was scheduled to attend class only from 8:15 to 10:15 a.m., and he was still at school around noon. At the close of trial, the trial court stated:

Provisionally I agree with the Defense contention that [Taylor] had a contractual interest at IPS School 26. However, that contractual interest ended at 10:15 on March 11th, 2004, when his classes ended. The Defendant was on school property two (2) hours after the conclusion of his classes. The indications in the report filed by Officer McClendon and testimony is provided, this is somewhere around 12:00, 12:15, about two (2) hours after classes let out. Notwithstanding any subjective belief regarding his right to be on the property, Mr. Taylor was instructed by an IPS officer to stay at one location, and Mr. Taylor refused that order .... But Mr. Taylor was given an opportunity to remain in the building to wait for his bus when Officer McClendon first encountered him. Mr. Taylor disregarded that instruction and when confronted and told to leave the building, the evidence is that he responded with attitude. That is my characterization based on the testimony that I have received. Given that, I find that the State has proven its case.

*Id.* at 22–23.

■ Taylor argues that the trial court improperly based its verdict "on the notion that a student's right to remain at his or her school ends when classes are finished." Appellant's Brief at 5. Taylor argues that the trial court improperly found that he did not have a contractual interest in remaining on the school property because his classes had ended at 10:15 a.m. During trial, on his motion to reconsider, and on appeal Taylor relies on *A.E.B.* to support his belief that he had a contractual interest in remaining on the school's property.

■ In *A.E.B.*, an assistant principal of a middle school informed A.E.B., a suspended student, to stay out of school until she heard from the IPS's downtown office regarding her expulsion. *A.E.B.*, 756 N.E.2d at 538. Despite the assistant principal's instruction, A.E.B. returned to school and was suspended once again. *Id.* After the second suspension, A.E.B. returned to school and "[o]nce at school, A.E.B. went to several classrooms and verbally insulted the teachers." *Id.* at 539. A police officer told the defendant to leave the school or she would be arrested for trespassing and disorderly conduct, and the defendant refused to leave. *Id.* The trial court found defendant to be a delinquent child for committing criminal trespass and disorderly conduct. *A.E.B.*, 756 N.E.2d at 538–539. On appeal, she alleged that because she was a student at the school there was insufficient evidence that she did not have a contractual interest in the property. *Id.* at 540. We held, "[e]ven assuming that [the defendant's] claim is correct, we find that [the defendant] violated whatever contract existed when she interfered with the educational activities at [the school] to the point where she committed the crime of disorderly conduct." *Id.* We concluded:

> [The defendant] did not have a contractual interest to remain on school property in order to disrupt the educational environment and to break the law. By committing the crime of disorderly conduct on school property, [the defendant] abandoned whatever contractual interest she had in the school property. Thus, we find that there was sufficient evidence to show that [the defendant] did not have a contractual interest in the school property when she was asked to leave the premises.

*Id.* at 541. Generally, *A.E.B.* holds that if a student has a contractual interest in school property, that interest is not unlimited and can be violated by the student's conduct. An inherent temporal and spatial limitation to a student's contractual interest in school property is present in *A.E.B.*

because A.E.B. was where she was not supposed to be, in several classrooms, and when she was not supposed to be there because the assistant principal had informed A.E.B. to stay out of school until she heard from the IPS's downtown office. Even assuming that a student has a contractual interest in school property, based on A.E.B., we conclude that such an interest is limited temporally to when taking classes or engaged in other school activities and limited spatially to areas necessary to the attendance function. See also Olsen v. State, 663 N.E.2d 1194, 1196 (Ind. Ct.App.1996) (holding that defendant's contractual interest in hotel room did not extend to hotel lobby).[3]

Here, Taylor was finished with class at 10:15 a.m. Around noon, Officer McClendon saw Taylor standing in the hallway by the front entry. Accordingly, Taylor had completed his classes almost two hours earlier. Further, Officer McClendon told Taylor he could wait for the city bus as long as he waited in the hallway by the front entry. While patrolling the school, Officer McClendon saw Taylor walking around in the building on two separate occasions. After his patrol ended, Officer McClendon waited for Taylor at the front entry. When Taylor returned, Officer McClendon told him to leave the building and Taylor refused. We find that there was sufficient evidence to show that Taylor did not have a contractual interest in the

school property where and when he was asked to leave the premises. See, e.g., A.E.B., 756 N.E.2d at 541.

■■■ Taylor also argues that he had a reasonable belief that he had a right to be at school and directs us to his testimony that the principal had given him permission to wait in the hallways. The belief that one has a right to be on the property of another will defeat the mens rea requirement of the criminal trespass statute if it has a fair and reasonable foundation. Olsen, 663 N.E.2d at 1196. It is for the trier of fact to determine whether the defendant believed that he had a right to be on the property of another and whether that belief had a fair and reasonable foundation. Myers v. State, 190 Ind. 269, 269, 130 N.E. 116, 117 (1921). Taylor's argument is essentially a request for us to reweigh the evidence, this we cannot do. See, e.g., A.E.B., 756 N.E.2d at 541.

For the foregoing reasons, we affirm Taylor's conviction for criminal trespass as a class A misdemeanor.

Affirmed.

VAIDIK, J. concurs.

MAY, J. dissents with separate opinion.

MAY, Judge, dissenting.

Because I believe the evidence is insufficient to support Taylor's conviction, I respectfully dissent.

---

3. The dissent cites Woods for the proposition that "if Taylor had a contractual interest in the school property, he could not be guilty of criminal trespass even after Officer McClendon told him to leave." In Woods, Woods had a membership contract with a health club that granted her "full access to the facilities on unlimited days and unlimited hours." Woods, 703 N.E.2d at 1117. Health club employees asked Woods to leave the health club property based on an erroneous computer record that indicated that her membership contract had expired even though it was still

in effect. Id. at 1116. Woods refused to leave and was convicted of criminal trespass. Id. On appeal, we held that Woods's membership granted her a contractual interest in the property occupied by the health club. Id. at 1118. We do not find Woods instructive because Woods's membership contract granted her "full access to the facilities on unlimited days and unlimited hours." Id. at 1117. Here, no evidence was presented that Taylor had a contract that provided him with full access to the school's property for unlimited hours.

The majority supports its decision, in part, with *A.E.B.*, wherein we affirmed a trial court's decision a student had committed criminal trespass at her school because she "violated whatever contract existed when she interfered with the educational activities at [the school] to the point where she committed the crime of disorderly conduct." *A.E.B.*, 756 N.E.2d at 540. However, *A.E.B.* is not dispositive of this case because the record does not reflect Taylor was engaged in disorderly conduct or any other criminal activity. Accordingly, assuming as we did in *A.E.B.* that a student has a contractual interest in being at school, the State has not demonstrated Taylor "abandoned whatever contractual interest [he] had in the school property." *Id.* at 541.

Nor does the fact the police officer asked Taylor to leave support a finding that Taylor no longer had a contractual interest. In *Woods v. State*, 703 N.E.2d 1115 (Ind.Ct.App.1998), Woods was convicted of criminal trespass after she was asked to leave a health club but refused. On January 7, 2002, Woods went to the club and was told her membership had expired. Woods had renewed her membership on January 2, 1997, but apparently her payment had not yet appeared on the database available to the receptionist.

The club's records later indicated Woods' payment had been posted on January 6. We held Woods retained a contractual right to remain on the premises because her membership contract granted her unlimited access to the facilities. We determined this was an undisputed factual basis for Woods' belief she had a contractual right to be on the premises. We held Woods' belief and her *bona fide* claim of right defeated the *mens rea* requirement of the criminal trespass statute and rendered her conviction erroneous.[4] *Id.* at 1117.

Pursuant to *Woods*, if Taylor had a contractual interest in being on the school property at noon on a school day, he could not be guilty of criminal trespass even after Officer McClendon told him to leave.[5] *See also Steele v. State*, 191 Ind. 350, 132 N.E. 739 (1921) ("the appellant, being a subtenant ... was there lawfully, which lawful occupancy and possession cannot be made unlawful in the sense of making such occupancy a violation of the criminal statute of trespass, by being notified to depart from the premises....").

The majority holds: "Even assuming that a student has a contractual interest in school property, based on *A.E.B.*, we con-

4. Nevertheless, we held Woods' membership did not entitle her to make unreasonable noise and disrupt the club's facility. Therefore, given Woods' membership status, the appropriate charge would have been disorderly conduct and not criminal trespass. *Woods*, 703 N.E.2d at 1118.

5. The majority asserts Woods is not instructive because Wood's contract gave her unlimited access to the health club facilities, while "no evidence was presented that Taylor had a contract that provided him with full access to the school's property for unlimited hours." At —— n. 3.

That seems to place a burden on Taylor to produce evidence regarding the contract he had in the school property, when Indiana law

clearly places the burden on the State to prove Taylor did not have a contractual interest in the property.

Second, this case is not about whether a student has unlimited access to school facilities at unlimited hours. It is about whether a student has a contractual interest sufficient to remain in a school lobby during regular business hours and wait for the public bus, which may or may not run on schedule.

Finally, Woods is instructive for the holding I cite it for: a person with a contractual interest cannot become a trespasser by virtue of being asked to leave the premises. If Taylor had a contractual interest, it was not extinguished by the officer telling him to leave.

clude that such an interest is limited temporally to when taking classes or engaged in other school activities and limited spatially to areas necessary to the attendance function." At 1027. The case the majority cites does not support that holding, because it deals with "invitees," not persons with a contractual interest in the property. *Olsen,* 663 N.E.2d 1194. Olsen claimed his rental of a room gave him a contractual interest in the hotel lobby where he was arrested for criminal trespass. We held Olsen was in the lobby as an invitee, pursuant to it being open to the public; "the fact that he had rented a room had no effect on his right to be in the lobby." *Id.* at 1196 n. 1. Unlike hotel lobbies, schools are not "open to the public." Accordingly, the state laws requiring Taylor to attend school either gave him a contractual right to be in the lobby at noon during a school day, or they did not.

The only evidence suggesting Taylor did not have a contractual interest in being at the school came when the prosecutor asked the police officer if Taylor paid rent to the school or had any contractual interest in the school of which the officer was aware. The officer replied, "Not that I know of." (Tr. at 9.) I agree the State need not "disprove every conceivable contractual interest" a defendant may have had in the property. *Fleck,* 508 N.E.2d at 541. However, it ought to have the burden

to disprove the most obvious possible contractual interest, here, a student's contractual interest in being at school. The lack of a contractual interest in the property is, after all, "a material element the State must prove to convict a person of criminal trespass." *Id.* at 540. I find in the officer's equivocal statement no "proof" of any fact, let alone proof beyond a reasonable doubt regarding a material element of the charged offense.

Schools presumably have internal procedures to deal with students who misbehave, and policies regarding where students may be and when.[6] The State presented no testimony regarding whether the school has a policy pertaining to students' presence at school after their classes have ended for the day and whether students have been made aware of such policy. The State did not prove Taylor had no contractual interest in being at the school during its regular business hours, even though his classes had ended two hours earlier. As the State failed to prove that element of criminal trespass, I would reverse.[7]

---

6. The State claims Officer McClendon was "employed for the sole purpose of ensuring that students [do] not linger after classes conclude." (Appellee's Br. at 5.) The State makes this assertion without citation to the record, and I find no such evidence in the record before us. I hope, for the safety of IPS students and faculty, officers are employed for more than that "sole purpose," and are also concerned about whether students bring guns and drugs to the school premises and whether strangers enter the school to endanger the staff, faculty, or students.

7. I am concerned that a criminal trespass prosecution was the first course of action against a student who remained on school property after his classes had ended. The record does not reveal why Taylor was arrested, rather than taken to the principal's office to clarify the situation. I appreciate the safety concerns facing our schools and that the educational process is hindered if classes are interrupted unnecessarily. Nevertheless, Taylor was not a stranger on the premises. As a policy matter, we should be reluctant to send our youth the message that if they remain at school after their classes have ended they will

be arrested and subjected to criminal prosecution. Presumably, if they are not causing trouble at school, we would prefer they remain there rather than roam aimlessly on the streets.