Cavin **POGUE**, Appellant/Defendant,

v.

**STATE of Indiana**, Appellee/Plaintiff.

No. 49A02–1001–CR–37.

Court of Appeals of Indiana.

Dec. 9, 2010.

Transfer Denied Feb. 24, 2011.

Suzy St. John, Marion County Public Defender, Appellate Division, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

During the summer of 2009, Appellant/Defendant Cavin Pogue was enrolled

in a program where he was paid to attend summer school classes at Indianapolis Metropolitan High School ("IMHS"), which is located on property owned by Goodwill Industries in Indianapolis. On July 1, 2009, Pogue came to the IMHS campus to collect compensation due to him for his prior class attendance. IMHS officials did not give Pogue his earned compensation and told him to leave the premises. Pogue refused and was eventually arrested for criminal trespass. Pogue was also arrested for resisting law enforcement after he refused to drop a box cutter that he was holding in his hand.

Pogue was subsequently charged with and convicted of Class A misdemeanor Criminal Trespass[1] and Class A misdemeanor Resisting Law Enforcement.[2] Pogue now appeals his convictions, specifically challenging whether the evidence presented during his trial was sufficient to prove the criminal trespass and resisting arrest charges. Concluding on this record that Pogue had a limited contractual interest that gave him the right to be on the property in question at the time of his arrest, we reverse Pogue's conviction for criminal trespass. Further concluding that Pogue's failure to drop the box cutter following a demand to do so by a law enforcement officer amounted to the forcible obstruction of the law enforcement officer's lawful execution of his duties, we affirm Pogue's conviction for resisting arrest.

## FACTS AND PROCEDURAL HISTORY

During the summer of 2009, Pogue was enrolled in a summer school program in which Goodwill Industries, in collaboration with the Indianapolis Industry Council, used stimulus funds to pay Indianapolis public high school students to attend summer school classes at IMHS, which again is located on property owned by Goodwill Industries on West Michigan Street in Indianapolis. Pogue became eligible for the program at IMHS after applying through a local Work One facility. Students in the program were informed of the expectations for their continued participation in the program and were told that they could be disqualified if they disrupted the school's peaceful environment or were suspended. Robert Moses, the school safety officer for IMHS, testified that it fell within his role as the school safety officer to ask students to leave the premises if they became violent or disrupted the school's peaceful environment.

At some point near the end of June, Pogue came to IMHS to collect the compensation owed to him for his prior class attendance. IMHS officials did not give Pogue his check and contacted Moses after Pogue allegedly became disorderly. When Moses arrived, he found that Pogue was calm. Moses spoke with Pogue and instructed him to follow the school administrators' instructions. Moses testified that Pogue was not banned from IMHS at that time and was allowed to return to the property.

On July 1, 2009, Pogue again came to IMHS to collect the compensation owed to him for his prior class attendance. IMHS officials again refused to give Pogue his check and contacted Moses. When Moses arrived, he found that Pogue was "clearly agitated, not speaking much" and was pacing back and forth in the school common area. Tr. p. 12. Moses claimed that he asked Pogue to "come outside" at least four or five times before threatening to call the police. Tr. p. 13. Pogue eventual-

---

1. Ind.Code § 35–43–2–2 (2009).

2. Ind.Code § 35–44–3–3 (2009).

ly left the building and walked slowly through the parking lot, at which time Moses called the Indianapolis Metropolitan Police Department ("IMPD") and requested than an officer come to the IMHS campus and remove Pogue.

When IMPD Officer Aaron Nagel arrived, Pogue was standing on a grassy area of the parking lot near Michigan Street. After speaking to Moses, Officer Nagel called out to Pogue, who did not respond. Officer Nagel noticed that Pogue was holding what appeared to be a knife in his right hand. Officer Nagel instructed Pogue to put the knife down. Pogue replied that he did not have a knife, but, rather, a box cutter. Pogue explained that he had the box cutter because he used it at work and that he had come to IMHS immediately after he left his place of employment. Officer Nagel told Pogue he did not care what it was and again instructed Pogue to put it on the ground. Officer Nagel did not see Pogue drop the box cutter, but, rather, testified that he saw Pogue make a motion like he was going to put the box cutter in his pocket.

Out of concern for his safety, Officer Nagel approached Pogue from behind, pinned Pogue's arms to his side, and tackled him to the ground. Once Pogue was on the ground, Officer Nagel pulled Pogue's left arm out first and put a handcuff on his left arm. Officer Nagel then pulled Pogue's right arm out from underneath him, and put the other handcuff on his right arm. Officer Nagel stated that Pogue did not give him any problems when he was pulling Pogue's arms out to hand cuff him. Officer Nagel noticed that the box cutter was laying underneath Pogue's body when he pulled Pogue off the ground.

The State charged Pogue with Class A misdemeanor criminal trespass and Class A misdemeanor resisting law enforcement. On December 16, 2009, following a bench trial, the trial court found Pogue guilty as charged. The trial court subsequently sentenced Pogue to concurrent terms of 365 days in jail, with 361 days suspended. The trial court gave Pogue four days credit for time served. The trial court did not place Pogue on probation, but ordered that he complete a total of sixty hours of community service work as a part of his sentence. Pogue now appeals.

## DISCUSSION AND DECISION[3]

 On appeal, Pogue contends that neither his trespass nor his resisting arrest convictions were supported by sufficient evidence.

When reviewing the sufficiency of the evidence to support a conviction, appellate courts must consider only the probative evidence and reasonable inferences supporting the verdict. It is the fact-finder's role, not that of appellate courts, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. To preserve this structure, when appellate courts are confronted with conflicting evidence, they must consider it most favorably to the trial court's ruling. Appellate courts affirm the conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict.

3. We held oral argument in this case on November 16, 2010, at Lawrence North High School. We wish to thank counsel for their advocacy and extend our appreciation to the faculty, staff, and students of Lawrence North for their fine hospitality.

*Drane v. State*, 867 N.E.2d 144, 146–47 (Ind.2007) (citations, emphasis, and quotations omitted).

## A. Criminal Trespass

■ The offense of criminal trespass is governed by Indiana Code section 35–43–2–2, which provides, in relevant part, that "(a) A person who: ... (2) not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent ... commits criminal trespass, a Class A misdemeanor." Lack of a contractual interest in the property is a material element that the State must prove to convict a person of criminal trespass. *Woods v. State*, 703 N.E.2d 1115, 1117 (Ind.Ct.App.1998) (citing *Fleck v. State*, 508 N.E.2d 539, 540 (Ind.1987)). Thus, to convict Pogue of Class A misdemeanor criminal trespass, the State needed to prove that Pogue: (1) did not have a contractual interest in the property and (2) knowingly or intentionally refused to leave the real property of another person (3) after having been asked to leave by the property owner's agent. The term " 'contractual interest,' as it is used in the criminal trespass statute, refers to the right to be present on another's property, arising out of an agreement between at least two parties that creates an obligation to do or not to do a particular thing." *Taylor v. State*, 836 N.E.2d 1024, 1026 (Ind.Ct.App.2005), *trans. denied.* "The State is not required to disprove every conceivable contractual interest the defendant might have had in the property." *Id.*

■ Generally, we note that schools, as well as businesses such as Goodwill Industries, have a legitimate interest in maintaining a safe environment and preserving order on their premises. However, once a school or business has entered into an agreement with an individual which grants the individual a contractual interest in its property, the individual may not be found to have committed criminal trespass so long as the individual's contractual interest remains. *See Woods*, 703 N.E.2d at 1117 (providing that lack of a contractual interest is a material element that the State must prove to convict a person of criminal trespass).

Here, the record demonstrates that Pogue applied for and was accepted into a summer school program offered by Goodwill Industries at IMHS wherein Pogue would receive monetary compensation in exchange for his attendance in summer school classes. As a result of his acceptance into the program, Pogue had the right to enter IMHS's premises for the purpose of completing the program, including attending classes and obtaining the offered compensation. This evidence demonstrates that Pogue and Goodwill Industries, through IMHS, entered into an agreement through which Pogue was given the right to be present on the IMHS premises for the purpose of completing the summer school program, thus granting Pogue a contractual interest in the IMHS premises. *See Taylor*, 836 N.E.2d at 1026 (providing that the term "contractual interest" refers to the right to be present on another's property arising out of an agreement between the parties). Because Pogue had a contractual interest in the IMHS premises, Pogue could only be found guilty of criminal trespass if the State proved that Pogue's interest was terminated prior to his arrest on July 1, 2009. *See* Ind.Code § 35–43–2–2.

It is undisputed that Pogue's contractual interest in the IMHS premises was not unlimited. The record demonstrates that pursuant to the terms of their agreement, Pogue's contractual interest was limited to the purpose of completing the summer

school program and could be terminated if Pogue became disruptive of or was suspended from the program. The record also demonstrates that Moses, in his capacity as the IMHS school safety officer, could ask Pogue to leave the IMHS premises if Pogue became violent or disruptive. At trial, Moses testified that when he approached Pogue he found that Pogue was "clearly agitated, not speaking much" and was pacing back and forth in the school common area. Tr. p. 12. The State, however, did not present any evidence that Pogue was violent or that his pacing was disruptive of the school environment. Moreover, Moses did not definitively testify that Pogue's contractual interest was terminated prior to his arrest, but rather that he was "reaching that point." Tr. p. 16. Accordingly, we conclude that based on this record, the State failed to present sufficient evidence to prove that Pogue's limited contractual interest in the IMHS premises was terminated prior to his arrest. As such, the record for the instant matter does not contain sufficient evidence to support Pogue's criminal trespass conviction.

### B. Resisting Law Enforcement

 The offense of resisting law enforcement is governed by Indiana Code section 35–44–3–3, which provides, in relevant part, that "(a) A person who knowingly or intentionally: (1) forcibly resists, obstructs, or interferes with a law enforcement officer . . . while the officer is lawfully engaged in the execution of the officer's duties . . . commits resisting law enforcement, a Class A misdemeanor." The word "forcibly" modifies "resists, obstructs, or interferes" and that force is an element of the offense. See Graham v. State, 903 N.E.2d 963, 965 (Ind.2009); Spangler v. State, 607 N.E.2d 720, 723 (Ind.1993). Thus, to convict Pogue of Class A misdemeanor resisting law enforcement, the State needed to prove that Pogue: (1)

knowingly or intentionally (2) forcibly resisted, obstructed, or interfered with a law enforcement officer (3) while the officer was lawfully engaged in the execution of his duties. One "forcibly resists," for purposes of forcibly resisting law enforcement, when one uses "strong, powerful, violent means" to evade a law enforcement official's rightful exercise of his or her duties. Graham, 903 N.E.2d at 965; Spangler, 607 N.E.2d at 726.

 Here, the record indicates that Pogue was in possession of a box cutter when Officer Nagel approached and began talking to him. The parties agree that a box cutter can be used as a deadly weapon and is capable of inflicting serious physical harm or death. The record also indicates that while Pogue did not display the box cutter in his possession to Moses prior to Officer Nagel's arrival, he held the box cutter in his hand throughout his brief interaction with Officer Nagel. In addition, Pogue did not discard the box cutter when instructed to do so by Officer Nagel, but rather "made a motion like he was going to put it in his pocket." Tr. p. 21.

The State argues, and we agree, that Pogue's act of displaying the box cutter throughout his interaction with Officer Nagel coupled with his refusal to drop the box cutter when instructed to do so amounted to a visual showing of strength and a threat of violence which was sufficient to prove that Pogue forcibly resisted, obstructed, or interfered with the rightful exercise of Officer Nagel's official police duties. Cf. Ajabu v. State, 704 N.E.2d 494, 496 (Ind.Ct.App.1998) (providing that the evidence was insufficient to support appellant's resisting law enforcement conviction because the record did not contain any evidence that appellant made threatening or violent actions toward the police). Thus, we conclude that the record con-

tained sufficient evidence to support Pogue's resisting law enforcement conviction.

The judgment of the trial court is reversed in part and affirmed in part.

VAIDIK, J., and BARNES, J., concur.