**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**BARBARA J. SIMMONS**
Oldenburg, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMIE E. GREEN, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1106-CR-316 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Rebekah F. Pierson-Treacy, Judge
The Honorable Shatrese Flowers, Commissioner
Cause No. 49F19-1103-CM-14302

**April 17, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Jamie Green (Green), appeals his conviction for disorderly conduct, a Class B misdemeanor, Ind. Code § 35-45-1-3.

We affirm.

## ISSUES

Green raises two issues on appeal, which we restate as follows:

(1) Whether the State presented sufficient evidence to support Green's conviction beyond a reasonable doubt; and

(2) Whether Green's disorderly conduct conviction violates Article 1, Section 9 of the Indiana Constitution.

## FACTS AND PROCEDURAL HISTORY

On March 2, 2011, Green and his friends went to the Brass Flamingo, a bar in Marion County, Indiana. They arrived close to the end of the cover charge period. Green and his friends attempted to enter the Brass Flamingo without paying the cover charge, but left the bar after the bouncer refused to let them in. Subsequently, Green and his friends returned and tried again to enter the Brass Flamingo without paying the cover charge. The bouncer then pushed Green out the door of the Brass Flamingo and pinned him against a car near the entrance.

During the confrontation between Green and the bouncer, Officer Scott Yaden (Officer Yaden), a police officer with the Indianapolis Metropolitan Police Department, arrived at the scene. Officer Yaden did not immediately step into the confrontation, but took the time to observe and assess the situation. Officer Yaden observed that the

bouncer had already pinned Green down and was repeatedly telling Green to calm down and leave. Officer Yaden noticed that Green was "combative" and "argumentative." (Transcript p. 13). He could also smell "the strong odor of an alcoholic beverage" emanating from Green. (Tr. p. 14). When observing that Green did not leave as instructed, Officer Yaden stepped in and told Green to leave. However, Green did not comply and started arguing with the staff of the Brass Flamingo instead. About this time Officer Yaden saw that a crowd was gathering. After Green continued arguing with the staff of the Brass Flamingo, Officer Yaden told Green that he had "had [his] chance," arrested Green, and sat him down on the curb. (Tr. pp. 16-17).

Although Green was initially quiet after being arrested, he then "began to get loud" and questioned "why he was being placed under arrest." (Tr. p. 17). Officer Yaden responded that he was arrested for public intoxication. Green's friends kept coming out of the Brass Flamingo, "pretty much enticing [Green]." (Tr. p. 17). Green became "louder and louder" and cursed at a volume "loud enough [to be heard] a block away." (Tr. p. 18). Officer Yaden instructed Green several times to be quiet, but Green did not obey. Green's yelling drew around "forty to fifty people" to the scene, forcing the staff of the Brass Flamingo to "escort people in and out to their vehicles" in order to break up the crowd. (Tr. pp. 18, 25-26).

On March 2, 2011, the State filed an Information charging Green with disorderly conduct, a Class B misdemeanor, Ind. Code § 35-45-1-3. On June 9, 2011, the trial court conducted a bench trial. The trial court found Green guilty as charged and sentenced him

to 180 days, with 2 days credit and 178 days suspended. The trial court also ordered Green to perform 32 hours of community service at a not-for-profit organization.

Green now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

### I. *Sufficiency of the Evidence*

On appeal, Green challenges the sufficiency of the evidence to support his disorderly conduct conviction. In reviewing the sufficiency of the evidence needed to support a criminal conviction, we consider only the probative evidence and reasonable inferences supporting the decision. *Turner v. State*, 953 N.E.2d 1039, 1059 (Ind. 2011) (quoting *Whedon v. State*, 765 N.E.2d 1276, 1277 (Ind. 2002)). We neither reweigh the evidence nor judge witness credibility. *Bailey v. State*, 907 N.E.2d 1003, 1005 (Ind. 2009). On a challenge to the sufficiency of the evidence, the evidence needs not overcome every reasonable hypothesis of innocence. *Pogue v. State*, 937 N.E.2d 1253, 1256 (Ind. Ct. App. 2011), *trans. denied*. The evidence is sufficient if an inference may reasonably be drawn from it to support the conviction. *Drane v. State*, 867 N.E.2d 144, 147 (Ind. 2007). When confronted with conflicting evidence, we consider it in a light most favorable to the trial court's ruling. *Id. at* 146. We will affirm a conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)).

Green maintains that the facts of his case do not fit the elements of disorderly conduct as charged. In particular, Green argues that he did not create any unreasonable noise during his encounter with Officer Yaden. Indiana Code § 35-45-1-3 provides, in

pertinent part, that "[a] person who recklessly, knowingly, or intentionally:  (1) engages in fighting or in tumultuous conduct; [or] (2) makes unreasonable noise and continues to do so after being asked to stop … commits disorderly conduct, a Class B misdemeanor."[1]

Under the Indiana disorderly conduct statute, the purpose of criminalizing "unreasonable noise" is to prevent "the harm which flows from the volume of the expression."  *Price v. State*, 622 N.E.2d 954, 966 (Ind. 1993).  The statute specifically prohibits "context-inappropriate *volume*."  *Whittington v. State*, 669 N.E.2d 1363, 1367 (Ind. 1996).  Accordingly, to sustain a disorderly conduct conviction for making unreasonable noise, the State must prove that the sound produced by a defendant is *too loud* for the circumstances.  *Id.*

Expression with an excessive volume can be found unreasonable when it agitates others at the scene, interferes with law enforcement operations, or is quite annoying to all present.  *Id.*; *J.D. v. State*, 859 N.E.2d 341, 344 (Ind. 2007).  In *Whittington*, the defendant cursed and yelled with a volume that could be heard from one room to another during an encounter with law enforcement, and he persisted in a "very loud and angry manner" after the police asked him to be quiet.  *Whittington*, 669 N.E.2d at 1366.  The *Whittington* court affirmed the defendant's disorderly conduct conviction because his loud speaking agitated others nearby, disrupted police investigations, made coordination of investigations difficult, and was very annoying to those present at the scene.  *Id.* at 1367, 1371.  Likewise, in *J.D.*, the defendant persistently yelled at an eardrum breaking

---

[1] On appeal, the State conceded that only the unreasonable noise element is applicable and accordingly argued that Green only committed disorderly conduct by making unreasonable noise (Appellee Br. p. 7).

volume when encountering the police and persisted to do so after the police threatened him with arrest. *J.D.*, 859 N.E.2d at 343. The *J.D.* court rejected the defendant's challenge of insufficient evidence as her yells interfered with a policeman's function as a law enforcement officer. *Id.* at 344.

Green's yelling at high volume sufficiently supports his conviction. The facts in the present case are akin to those in *Whittington* and *J.D.* Green's yelling was unreasonably loud because it could be heard "a block away." (Tr. p. 18). Although Green was initially loud, he became even worse when his friends started to incite him, resulting in a gathering of "forty to fifty people." (Tr. pp. 18, 25). Though Officer Yaden asked Green to stop and be quiet several times, Green did not comply. The crowd drawn by Green's yelling forced the staff of the Brass Flamingo to "escort people in and out to their vehicles so that they weren't standing there." (Tr. 26). Based on these facts, a reasonable inference can be made that Green disrupted law enforcement operations and annoyed the Brass Flamingo's patrons. Thus, we find that the State presented sufficient evidence beyond a reasonable doubt to support Green's conviction.

## II. *Article 1, Section 9 of the Indiana Constitution*

Next, Green argues that his disorderly conduct conviction violates the Indiana Constitution because his expression was protected political speech. Article 1, Section 9 of the Indiana Constitution mandates:

> No law shall be passed, restraining the free interchange of thought and opinion, or restricting the right to speak, write, or print, freely, on any subject whatever: but for the abuse of that right, every person shall be responsible.

Since one's expressive activity may be political speech protected under the Indiana Constitution's free speech provision, an application of the Indiana disorderly conduct statute must pass constitutional scrutiny. *See Price*, 622 N.E.2d at 961. In Indiana, we employ a two-step analysis in reviewing the constitutionality of an application of the Indiana disorderly conduct statute. *Whittington*, 669 N.E.2d at 1367. Pursuant to this two-step analysis, we need to decide (1) "whether [a] state action has restricted a [defendant's] expressive activity" and (2) "whether the restricted activity constitute[s] an 'abuse' of the right to [free speech]." *Id.*

## A. *Restrictions on Expressive Activity*

Under the first prong of the analysis, a defendant must establish that "the state action has, in the concrete circumstances of the case, restricted his or her opportunity to engage in expressive activity." *Id.* This prong may be satisfied when a defendant has been convicted of disorderly conduct based on his loud expression during an encounter with law enforcement. *Id.* at 1370. Green was convicted of disorderly conduct for yelling with an inappropriate volume and for persisting to do so after being asked to stop. Thus, Green has established that the State has restricted his opportunity to engage in expressive activity.

## B. *Political Expression*

If, as here, the State action has restricted one's expressive activity, we then must decide whether the restricted activity constituted an "abuse" of the right to free speech. *See U.M. v. State*, 827 N.E.2d 1190, 1192 (Ind. Ct. App. 2005). In the ordinary case, we only have to find that the State's determination of an "abuse" to be rational. *See id.*

However, if a defendant is able to show that his expressive activity was "political," the State must demonstrate that it did not "materially burden" the defendant's opportunity to engage in political expression. *Id.* The State does not materially burden political expression if the restricted speech "inflicted particularized harm analogous to tortuous injury on readily identifiable private interests." *Id.* "Evidence of mere annoyance or inconvenience is not sufficient" to justify restricting political speech. *Id.*

In determining whether expressive activity is political expression, we review the nature of the expression under an objective standard without speculating what the speaker might have meant. *Whittington*, 669 N.E.2d at 1370. The defendant bears the burden of demonstrating that his expression was political. *Id.*

Expressive activity constitutes political expression "if its aim is to comment on government action, including criticism of an official acting under color of law." *Blackman v. State*, 868 N.E.2d 579, 585 (Ind. Ct. App. 2007), *trans. denied*. On the other hand, expressive activity is not political expression when the expressive activity focuses on the conduct of private individuals, including on the speaker himself or herself. *Whittington*, 669 N.E.2d at 1370. A mixture of political expression and non-political expression renders the expressive activity ambiguous. *Blackman*, 868 N.E.2d at 585-86. If expressive activity is ambiguous in context, we will find that it does not constitute political speech and will review the constitutionality of the state-imposed restriction under the rationality standard. *Whittington*, 669 N.E.2d at 1370.

In *Blackman*, the defendant's expressive activity encompassed two parts: (1) her shouted curses at a police officer during a pat-down search, her continued shouting after

the search was over, her refusal to leave the scene despite the officer telling her to do so several times, and (2) her assertion of her right to be where she was. *Blackman*, 868 N.E.2d at 585-86. The defendant's former expressions were considered "political in nature" as they were directed to the legality and appropriateness of government actions under color of law. *Id.* However, we found that the defendant's assertion of her right to be where she was an expression focusing on her own conduct and was therefore not political in nature. *Id.* at 586. We considered the expressions of the defendant as a whole and concluded that the defendant's expressive activity was ambiguous as to whether the defendant was commenting on her own conduct or that of the police. *Id.*

Green's yelling was akin to the defendant's ambiguous expressions in *Blackman* because Green's expressive activity included not only comments on an official acting under color of law, but also expressions involving the conduct of private individuals. Specifically, Green's comments concerning his arrest, which he questioned as "why he was being placed under arrest," were political expressions because they were comments on Officer Yaden's actions. (Tr. p. 17). However, we cannot consider Green's loud yelling in response to his friends as political expression because a reasonable inference can be made that such expressive activity focused on the conduct of private individuals. When taking all of Green's abovementioned expressions as a whole, we find that Green's expressive activity was ambiguous.

Having concluded that Green's speech was not a political expression, we evaluate constitutionality of his disorderly conduct conviction "under standard rationality review." *Whittington*, 669 N.E.2d at 1370. A disorderly conduct conviction that does not involve

political speech is constitutional if it is reasonable to conclude that the defendant's expressive activity "was an 'abuse' of the right to speak or was, in other words, a threat to peace, safety, and well-being." *Id.* at 1371.

Here, Green's expressive activity certainly met this standard. Green's high volume while yelling drew a gathering of "forty to fifty" people watching outside of the Brass Flamingo. (Tr. pp. 18, 24-25). The gathering was significant enough to force the staff of the Brass Flamingo to "escort people in and out to their vehicles." (Tr. p. 26). A reasonably inference can be made that Green's expressive activity posed a threat to peace, safety, and well-being. Therefore, Green's conviction does not violate his free speech rights protected under Article 1, Section 9 of the Indiana Constitution.

## CONCLUSION

Based on the foregoing, we conclude that (1) the State presented sufficient evidence to support Green's disorderly conduct conviction beyond a reasonable doubt, and (2) Green's conviction does not violate Article 1, Section 9 of the Indiana Constitution.

Affirmed.

FRIEDLANDER, J. and MATHIAS, J. concur