## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

May 11 2016, 8:18 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Timothy J. Burns<br>Indianapolis, Indiana | Gregory F. Zoeller<br>Attorney General<br><br>Jesse R. Drum<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony Bozzo,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 11, 2016<br><br>Court of Appeals Case No.<br>49A02-1509-CR-1486<br><br>Appeal from the Marion Superior Court<br><br>The Honorable Amy Jones, Judge<br><br>Trial Court Cause No.<br>49G08-1412-CM-56413 |

**Altice, Judge.**

**Case Summary**

[1] Following a bench trial, Anthony Bozzo was convicted of Trespass as a Class A misdemeanor. On appeal, Bozzo challenges the sufficiency of the evidence supporting his conviction.

[2] We affirm.

### Facts & Procedural History

[3] Bozzo is a graduate student of Indiana University (IU) at the Indiana University-Purdue University Indianapolis (IUPUI) campus. In order to carry out research related to his coursework, his graduate program issued him a key to Room 121 in Cavanaugh Hall (CA 121), which is located on the IUPUI campus. Bozzo was not issued a key to any outside doors of Cavanaugh Hall.

[4] In 2013, Bozzo breached security at Cavanaugh Hall by propping open an outside door and leaving the building unsecured after hours. On December 6, 2013, Sherry Queener, Director of the Graduate Office for IU, sent a letter to Bozzo about the breach. She advised Bozzo that "IUPUI Police will not grant you access to Cavanaugh Hall after hours in the future and that you should arrange your schedule such that you can be out of the building by the time IUPUI Police officers lock the building down for the evening or weekends." *State's Exhibits* at 4. Cavanaugh Hall closes at 10:00 p.m. Monday through Friday and at 7:30 p.m. on Saturday and Sunday.

[5] Shortly after midnight on February 9, 2014, Officer Scott Dunning, a police officer for the IUPUI campus, found Bozzo in CA 121. Bozzo admitted that he

had attempted to hide from Officer Dunning. After learning Bozzo had been notified by letter that he was not permitted to be in Cavanaugh Hall after hours, Officer Dunning confiscated Bozzo's key to CA 121 and issued him a trespass warning. The warning informed Bozzo that he was "banned from reentering" Cavanaugh Hall after building hours from February 9, 2014, until February 9, 2016, and that he would be prosecuted for criminal trespass for a violation. *Id.* at 2.

[6] At approximately 1:30 a.m. on December 22, 2014, Simone Evans,[1] an IU police officer working the IUPUI campus, found Bozzo and a woman in a second-floor classroom in Cavanaugh Hall. Bozzo claimed he was working on finals. After learning of the previous trespass warning, Officer Evans arrested Bozzo for criminal trespass. On December 31, 2014, the State charged Bozzo accordingly.

[7] A bench trial was held on June 10, 2015, at the conclusion of which the trial court found Bozzo guilty of criminal trespass as a Class A misdemeanor. A sentencing hearing immediately followed. The trial court sentenced Bozzo to one year, with 361 days suspended to probation. As a condition of his probation, the trial court ordered that Bozzo "stay away from IUPUI Campus . . . through December 31st, 2015 or longer should the university want it to be

---

[1] Officer Evans was accompanied by a second officer, Kevin Kinghorn.

longer." *Transcript* at 29. After the restriction is lifted, Bozzo would then be permitted in the buildings on the IUPUI campus when open to the public.

**Discussion & Decision**

[8] Bozzo argues that the evidence was insufficient to support his conviction. Specifically, he contends the State failed to prove (1) that he did not have a contractual interest in IUPUI's property and (2) that the officers were agents of the university. Our standard of reviewing challenges to the sufficiency of the evidence supporting a criminal conviction is well settled.

> When reviewing a challenge to the sufficiency of the evidence underlying a criminal conviction, we neither reweigh the evidence nor assess the credibility of witnesses. The evidence—even if conflicting—and all reasonable inferences drawn from it are viewed in a light most favorable to the conviction. "[W]e affirm if there is substantial evidence of probative value supporting each element of the crime from which a reasonable trier of fact could have found the defendant guilty beyond a reasonable doubt." *Davis v. State*, 813 N.E.2d 1176, 1178 (Ind. 2004).

*Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[9] To prove trespass as a Class A misdemeanor, the State was required to show that Bozzo, "not having a contractual interest in the property, knowingly or intentionally enter[ed] the real property of [IU] after having been denied entry by [IU] or [IU]'s agent." Ind. Code § 35-43-2-2(b)(1). A person may be denied entry through a personal communication, oral or written. I.C. § 35-43-2-2(c)(1).

[10] Bozzo first argues that he had a contractual interest in the property by virtue of his enrollment as a student and his employment on campus, and as such, he could not have been convicted of criminal trespass.

[11] The phrase "contractual interest in the property" is not defined by the criminal trespass statute or elsewhere in the Indiana Code. Our Supreme Court, however, has determined that "a contractual interest in the property" should be very narrowly defined as "a right, title, or legal share of real property arising out of a binding agreement between two or more parties." *Lyles v. State*, 970 N.E.2d 140, 143 n. 2 (Ind. 2012).[2] The lack of a contractual interest in the real property at issue is a material element of the offense that the State must prove beyond a reasonable doubt. *Id*. at 143 n.3. In order to prove the offense of criminal trespass beyond a reasonable doubt, "the State need not 'disprove every conceivable contractual interest' that a defendant might have obtained in the real property at issue." *Id*. (citation omitted). Rather, the State "satisfies its burden when it disproves those contractual interests that are reasonably apparent from the context and circumstances under which the trespass is alleged to have occurred." *Id*.

---

[2] As Justice Rucker noted in dissent, prior to this pronouncement by our Supreme Court, the Court of Appeals had declared that the term "'contractual interest,' as it is used in the criminal trespass statute, refers to the right to be present on another's property, arising out of an agreement between at least two parties that creates an obligation to do or not to do a particular thing. *Taylor v. State*, 836 N.E.2d 1024, 1026 (Ind. Ct. App. 2005) (citing *A.E.B. v. State*, 756 N.E.2d 536, 540 (Ind. Ct. App. 2001)), *trans. denied*." *Lyles*, 970 N.E.2d at 144 (Rucker, J. dissenting).

[12] By virtue of his status as a student and/or employee of IU, Bozzo had a contractual interest in the university's property. This contractual interest, however, was not without limitation. The record clearly reflects that Bozzo's access to Cavanaugh Hall was limited to the building's regular hours. Although Bozzo had a key to CA 121, he was not provided with a key to access the outer doors of that building after hours. Officer Evans testified that students are not permitted in Cavanaugh Hall after hours, and she was not aware of any special privileges granted to Bozzo. Further, after a security breach incident occasioned by Bozzo in 2013, he received a written communication from the Director of the Graduate Office expressly informing him that he did not have after-hours access to Cavanaugh Hall and that he should arrange his schedule accordingly. Two months after receiving this letter, Bozzo was found in Cavanaugh Hall after hours and issued a trespass warning, which explicitly provided that Bozzo was "banned from reentering" Cavanaugh Hall after building hours for a two-year period and further warned him that he would be prosecuted for criminal trespass for a violation. *State's Exhibits* at 2.

[13] We have before held that when a contractual interest ends, the criminal trespass statute is triggered. In *Taylor*, the defendant was a student who was scheduled to attend class from 8:15 a.m. to 10:15 a.m., but was still on school property around noon. After the student refused to leave, he was arrested for criminal trespass. On appeal, Taylor argued that he had a contractual interest to stay on the school's property. This court affirmed the defendant's conviction because his interest in the school's property was "limited temporally to when taking

classes or engaged in other school activities and limited spatially to areas necessary to the attendance function." *Taylor*, 836 N.E.2d at 1028 (citing *Olsen v. State*, 663 N.E.2d 1194 (Ind. Ct. App. 1996)).

[14] Like the defendant in *Taylor*, Bozzo's contractual interest in IUPUI's property was limited temporally and spatially. He was permitted to access Cavanaugh Hall during regular hours without breaking the law. After the building closed, his interest ceased. The State's evidence sufficiently disproved the contractual interests that are reasonably apparent from the context and circumstances under which the trespass is alleged to have occurred. *See Frink v. State*, 2016 WL 1158614 *3 (Ind. Ct. App. Mar. 24, 2016) (concluding the lack of contractual interest was "reasonably apparent" under the circumstances where defendant had been informed numerous times that she was not to be on school property and reminded of the trespass warning).

[15] Bozzo also argues that the State failed to prove that Officer Dunning, who issued the written trespass warning, and Officer Evans, who arrested him for trespass, were agents of IU. We disagree.

[16] We have described the elements of an agency relationship as follows:

> "Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former." To establish an actual agency relationship, three elements must be shown: (1) manifestation of consent by the principal, (2) acceptance of authority by the agent, and (3) control exerted by the principal over the agent. These elements

may be proven by circumstantial evidence, and there is no requirement that the agent's authority to act be in writing.

*Glispie v. State*, 955 N.E.2d 819, 822 (Ind. Ct. App. 2011) (quoting *Demming v. Underwood*, 943 N.E.2d 878, 883 (Ind. Ct. App. 2011)) (citations omitted).

[17] Here, Officer Dunning testified that he has been "employed with Indiana University since 1995" and that he transferred from the Bloomington campus to IUPUI in 2011. *Transcript* at 17. He further testified that one of his duties is "to trespass someone who is not supposed to be on school property." *Id*. at 18. Likewise, Officer Evans testified that she was employed by IU and she had an employment contract with IU. She also corroborated Officer Dunning's testimony that as an officer for IUPUI, she "can trespass people." *Id*. at 7. Officer Evans further described that her duties were to "ensure the safety and security of the campus." *Id*. at 6.

[18] Additional evidence demonstrating that Officer Dunning and Officer Evans were agents of IU is found in the letters to Bozzo from the Director of the Graduate Office. In the December 6, 2013 letter, Queener noted that Bozzo left a door to Cavanaugh Hall open "when the building had been locked down by police officers in the course of their routine actions." *State's Exhibits* at 4. She further advised Bozzo that "IUPUI Police will not grant you access to Cavanaugh Hall after hours." *Id*. Queener's February 10 and March 3, 2014 letters show that Officer Dunning reported to IU administration: "I have received a copy of the police action from Sergeant Scott Dunning (Indiana

University PD – Indianapolis)" and "I was called upon to act based upon the report of police action from [Dunning]." *State's Exhibits* at 6, 9.

[19] The State also submitted into evidence an exchange of emails between Brian Tomlinson, Assistant Dean of Students for IUPUI, and Bozzo that show IU administration and IU police work together. In one exchange, Tomlinson notes that the building coordinator "had not provided [Bozzo] additional access or permissions to the building beyond what Dr. Queener or IUPD had originally instructed." *Id*. at 14. In a response to an email from Bozzo, Tomlinson noted, "I know that you are concerned about complying with the directives of IUPD. I believe Capt. Figg has communicated to you the current status of the no trespass order." *Id*. at 13. Finally, Bozzo himself acknowledged that IU police officers are agents of IU, writing: "I'm forbidden by the police department, acting as an agent of the university . . . ." *Id*. at 12.

[20] Here, the State's evidence consisted of more than bald assertions by the IU police officers that they were acting as agents of IU. Communications by university administration clearly indicate that IU consented to the officers acting on behalf of IU and that the officers reported to university administration. The testimony of the officers demonstrates that they accepted the authority granted them by the university. The State presented ample evidence to establish an agency relationship between the IU police officers and the university.

Having concluded that the State's evidence is sufficient to support the court's determination that Bozzo did not have a contractual interest and that the officers were agents of the university, we affirm Bozzo's conviction for criminal trespass as a Class A misdemeanor.

Judgment affirmed.

Bailey, J. and Bradford, J., concur.