## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 26 2017, 10:44 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Timothy J. Burns
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Shemata Chatman, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | October 26, 2017 <br><br> Court of Appeals Case No. <br> No. 49A02-1705-CR-1148 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Amy Jones, Judge <br><br> Trial Court Cause No. <br> 49G08-1608-CM-30994 |

**Brown, Judge.**

[1] Shemata Chatman appeals her conviction for criminal trespass as a class A misdemeanor. Chatman raises one issue which we revise and restate as whether the evidence is sufficient to sustain her conviction. We affirm.

## Facts and Procedural History

[2] On August 9, 2016, Chatman entered the lobby area of the IndyGo Transit Center in downtown, Indianapolis. Southport Police Officer David Howe was employed by a security company which was contracted with IndyGo Transit Center to provide security and had received training with respect to the policies for trespassing and the lost and found. A passenger approached Officer Howe and indicated that a woman was "creating a lot of commotion" and arguing with staff. Transcript Volume II at 15. Officer Howe walked inside the Transit Center and observed that Chatman was screaming, he could "hear it just echoing off the walls," Chatman was "disrupting the entire operations in the [inaudible]," and Officer Howe asked her to step outside so that he could attempt to resolve her problem. *Id.* at 15-16. After stepping outside, Chatman told Officer Howe that she had lost her purse, and he observed that she "was so elevated with her mannerisms, the way she was screaming and yelling . . . ." *Id.* at 16. He asked Chatman "what route she was on and what time was it," and Chatman first said "she was on route ten and then she had stated that she had walked from IUPUI and then she had stated that she had walked from University of Indianapolis." *Id.* at 17. She could not give him "the exact time of where it was that she was on the bus." *Id.* Officer Howe told Chatman about the loss of property procedures, that any property left on the buses would

be inventoried in the evening and brought down the next morning, and that she could come back between 10:00 a.m. and 12:00 p.m. the next day. Chatman "continued to yell and scream and tell [Officer Howe] she's not leaving." *Id.* at 18. He asked her if there was anybody he could call to pick her up, and she said "you can call the mayor." *Id.* At that point, Chatman "threw herself on the concrete" and "down on the ground screaming." *Id.*

[3] Transportation Supervisor Carl Pickens noticed a loud outburst, approached Chatman, and noticed that she was very upset and screaming and yelling at security and that people had started to gather. Supervisor Pickens attempted to talk to Chatman, but she was not listening to anything he said and Chatman "was just saying all sorts of crazy stuff" and "refusing to calm down." *Id.* at 9. He asked her which bus she was on, and "[a]t first, she said route ten" and "then she said she was at Indianapolis University and then she said IUPUI."[1] *Id.* at 12. Chatman was "just making a lot of noise" and "wasn't listening to anyone." *Id.* She did not indicate that she needed bus transportation. Officer Howe observed, at one point, that she was screaming at people across the street.

[4] Officer Howe told Chatman "you're going to have to leave for the day" and "[y]ou'll be able to come back tomorrow to try to get your property back, but you're going to have to leave for the day." *Id.* at 18-19. He told her "three times that she needed to get up and she needed to leave the property" and

---

[1] Supervisor Pickens testified that "at any given point during the busy time of day, we do twelve busses going route ten at the same time." Transcript Volume II at 12.

"ma'am, if you do not get up and leave the property, you are going to force me to have to put you under arrest." *Id.* at 19. Chatman asked "what for," Officer Howe stated "for Criminal Trespass," and Chatman replied "I don't care. I'm not leaving." *Id.* Officer Howe placed Chatman under arrest.

[5] On August 10, 2016, the State charged Chatman with criminal trespass as a class A misdemeanor. The court held a bench trial at which Supervisor Pickens testified regarding his responsibilities, the role of security, that Officer Howe was contracted with IndyGo as security, and that the policy for lost items is that anything that is lost or left on a bus at the end of the route is taken to a lost and found at the Transit Center. When asked if "generally, customers who have lost something on the bus will come to the transit center and ask if anything has been turned in," Supervisor Pickens testified "[t]he following day after they've lost it, yes." *Id.* at 10. When asked why he asked Chatman to leave three times, Officer Howe testified "[b]ecause I was giving her an opportunity, because the last thing I wanted to do was place her under arrest unless I absolutely had to," "I would have rather not done that route," "I would have rather done something else, but she wasn't giving me any other options," and "[a]t the point when she throws herself on the ground and like I said, we was getting a large group of people gathering around and she refused to leave." *Id.* at 19-20. The court found Chatman guilty of criminal trespass as a class A misdemeanor and sentenced her to 365 days with 361 days suspended to probation and forty hours of community service.

## *Discussion*

[6] The issue is whether the evidence is sufficient to sustain Chatman's conviction for criminal trespass as a class A misdemeanor. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not assess witness credibility or reweigh the evidence. *Id.* We consider conflicting evidence most favorably to the trial court's ruling. *Id.* We affirm the conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* (quoting *Jenkins v. State*, 726 N.E.2d 268, 270 (Ind. 2000)). It is not necessary that the evidence overcome every reasonable hypothesis of innocence. *Id.* at 147. The evidence is sufficient if an inference may reasonably be drawn from it to support the verdict. *Id.*

[7] Chatman asserts she had a contractual interest in being at the Transit Center since she had ridden the bus by ticket or pass, and the fact that IndyGo maintains a lost and found service for travelers gives additional support to her right to be there in order to make a claim to her lost property. The State's response is that Chatman's opportunity to obtain her property from the lost and found at the Transit Center does not grant her a contractual interest to yell, scream, and disrupt the operations of the Transit Center that would somehow serve as a shield to her prosecution for criminal trespass. It asserts that Officer Howe had authority to enforce the rules of the Center including its trespassing

policies and that Chatman had been repeatedly asked to leave and warned that she would be arrested if she did not leave.

[8] Ind. Code § 35-43-2-2(b) provides in part that "[a] person who . . . not having a contractual interest in the property, knowingly or intentionally refuses to leave the real property of another person after having been asked to leave by the other person or that person's agent . . . commits criminal trespass, a Class A misdemeanor." A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so, and a person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. Ind. Code § 35-41-2-2.

[9] The Indiana Supreme Court has stated that a "contractual interest in the property" is a right, title, or legal share of real property arising out of a binding agreement between two or more parties. *Lyles v. State*, 970 N.E.2d 140, 143 n.2 (Ind. 2012). The Court held that, in proving the lack of a contractual interest, the State need not disprove every conceivable contractual interest that a defendant might have obtained in the real property at issue. *Id.* at 143. The Court further held that the State satisfies its burden when it disproves those contractual interests that are reasonably apparent from the context and circumstances under which the trespass is alleged to have occurred. *Id.*

[10] The record reveals that Chatman caused a commotion at the Transit Center, stated she lost her purse, and yelled and screamed at Officer Howe. She did not give Supervisor Pickens or Officer Howe specific information about the bus

route on which she may have lost her purse. Officer Howe told her about the loss of property procedures and that she could come back the following day, and she continued to yell and scream, told him she was not leaving, and threw herself on the ground. Officer Howe told Chatman three times that she needed to leave and that, if she did not, she would be arrested, she stated that she did not care and was not leaving, and he placed her under arrest. Chatman does not argue that Officer Howe did not have the authority to ask her to leave the Transit Center. A reasonable trier of fact could infer from the testimony that Chatman did not have a contractual interest in the property of the Transit Center at the time she was asked to leave and that the testimony refuted the most reasonable apparent sources from which a person in Chatman's circumstances might have derived a contractual interest.

[11] Based upon the record, we conclude that the State presented evidence of a probative nature from which a reasonable trier of fact could find beyond a reasonable doubt that Chatman committed criminal trespass as class A misdemeanor. *See Lyles*, 970 N.E.2d at 141-143 (observing that the defendant was an account holder of a bank, not an owner or employee of the bank, and asked for a free printout of his account, that a manager explained the bank's policy of offering a statement for a fee, that the defendant persisted in his request and became irate and disrespectful, and that the manager asked the defendant to leave and called the police when the defendant refused and holding that the evidence taken together "refuted each of the most reasonably apparent sources from which a person in the defendant's circumstances might

have derived a contractual interest in the bank's real property: as an owner, as an employee, and as an account holder"); *Taylor v. State*, 836 N.E.2d 1024, 1025-1028 (Ind. Ct. App. 2005) (observing that an officer told Taylor it was fine to wait in the hallway by the front entry of a school building, that the officer saw Taylor walking around the building on two occasions and later told him to leave the building, repeating himself five times in quick succession, and that Taylor refused and stated he was not leaving and holding there was sufficient evidence to show that Taylor did not have a contractual interest in the property where and when he was asked to leave the premises), *trans. denied*; *A.E.B. v. State*, 756 N.E.2d 536, 540-541 (Ind. Ct. App. 2001) (observing that A.E.B. was asked to leave a school building after disrupting classes, cursing teachers, and making a loud noise after she was told to stop and that the school administration had the power to request that A.E.B. leave the property after she began to interfere with the educational activities and holding that A.E.B. had abandoned whatever contractual interest she had in the school property and that there was sufficient evidence to show A.E.B. did not have a contractual interest in the school property when she was asked to leave the premises).

## Conclusion

[12] For the foregoing reasons, we affirm Chatman's conviction for criminal trespass as a class A misdemeanor.

[13] Affirmed.

Najam, J., and Kirsch, J., concur.