## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Aug 23 2019, 7:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

A. David Hutson
Hutson Legal
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Samuel J. Dayton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jarvis Peele,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

August 23, 2019

Court of Appeals Case No.
19A-CR-781

Appeal from the Clark Circuit
Court

The Honorable Bradley B. Jacobs,
Judge

Trial Court Cause No.
10C02-1705-F6-915

**Baker, Judge.**

[1]     Jarvis Peele appeals his convictions for Level 6 Felony Possession of Methamphetamine,[1] two counts of Level 2 Felony Unlawful Possession of a Legend Drug,[2] Level 6 Felony Criminal Confinement,[3] Class A Misdemeanor Resisting Law Enforcement,[4] and Class B Misdemeanor Possession of Marijuana.[5]  He raises the following arguments:  (1) the trial court erroneously denied his motion for discharge following a speedy trial request; (2) the trial court erroneously admitted certain evidence; and (3) there is insufficient evidence supporting his conviction for resisting law enforcement.  Finding that the evidence is insufficient to support his conviction for resisting law enforcement and finding no other reversible error, we affirm in part, reverse in part, and remand with instructions to vacate Peele's resisting law enforcement conviction and to amend his sentencing order to reflect that change.

## Facts

[2]     On May 6, 2017, Clarksville Police Officer Brittany Allen observed a green Ford Focus change lanes to the left lane in front of Officer Allen's vehicle without signaling or yielding the right-of-way to Officer Allen's vehicle.  While stopped in traffic, Officer Allen conducted a search using the number from the

---

[1] Ind. Code § 35-48-4-6.1(a).

[2] Ind. Code § 16-42-19-13.

[3] Ind. Code § 35-42-3-3(a).

[4] Ind. Code § 35-44.1-3-1(a)(1).

[5] I.C. § 35-48-4-11(a)(1).

temporary registration affixed to the Ford Focus. The search revealed that the temporary registration was registered to a 2002 Kia.

[3] The Ford Focus and Officer Allen continued driving. Officer Allen intended to make a traffic stop, but the driver of the Ford Focus, later identified as Peele, stomped on the brakes suddenly and turned left without using a turn signal. Officer Allen activated her emergency lights to conduct a traffic stop. Peele slowed down but did not stop; at one point, he failed to stop at a stop sign. Officer Allen activated her vehicle's siren at that point. Peele continued driving, disregarding several more stop signs. As the Ford Focus slowed down slightly to turn, Officer Allen saw the vehicle's rear passenger door open. A woman, later identified as Melissa Pollard, jumped out of the vehicle. Peele continued driving and ran over Pollard's ankle.

[4] As Peele drove his vehicle on the wrong side of the road, the vehicle ran over a curb and got stuck in a grassy area, finally coming to a stop. Officer Allen stopped and exited her vehicle, drawing her weapon because she concluded it was a high risk stop. She commanded Peele to show his hands, get on the ground, and stay still, but Peele refused to comply. He reached under the driver's seat with his right hand, staring at Officer Allen and ignoring her commands to stop reaching under the seat. He slowly brought his hand out and put it in his waistband. She again told him to show his hands and get on the ground, but he did not comply. Instead, he again reached under his seat. He removed his hand from the seat and began to walk away from the Ford Focus.

Officer Allen was eventually able to determine that Peele did not have anything in his hands, so she holstered her gun and drew her Taser instead. Peele continued to ignore the officer's commands to stop moving. She discharged her Taser; as she did so, Peele dipped his head and turned to look at her, and the Taser struck Peele in the forehead. Once the Taser completed its cycle, Officer Allen again ordered Peele to show his hands. He refused, instead moving his hands around underneath his body. She reactivated the Taser and, after it had completed another cycle, again ordered him to show his hands. He finally complied and was handcuffed by another officer.

During a search of Peele incident to arrest, the arresting officer found a baggie in his waistband that contained a substance later determined to be bath salts. Officers also searched Peele's vehicle and found substances later determined to be methamphetamine, marijuana, ethypentylone, alprazolam, and buprenorphine.

On May 9, 2017, the State charged Peele with Level 6 felony possession of methamphetamine, two counts of Level 6 felony unlawful possession of a legend drug, Class A misdemeanor resisting law enforcement, and Class B misdemeanor possession of marijuana. It later added an allegation that Peele was an habitual offender.

On November 21, 2018, Peele fired his public defender and demanded a speedy trial; therefore, the seventy-day period set forth by Criminal Rule 4 would elapse on January 30, 2019. The trial court set his trial date for December 18,

2018.[6] On December 18, 2018, the trial court entered a minute entry on the Chronological Case Summary (CCS) stating that "[t]he Court enters a congested docket due to a jury trial called" in another case against Peele. Appellant's App. Vol. II p. 12. On January 10, 2019—still within the seventy-day window—the trial court scheduled this case for trial on February 19, 2019. Peele objected to that trial date; the trial court overruled the objection. Peele later filed a pro se "Writ of Habeas Corpus," which the trial court and the State treated as a motion to discharge. The trial court denied the request.

[9] Peele's trial took place on February 19, 2019. The jury found him guilty as charged and the trial court later found him to be an habitual offender. On March 12, 2019, the trial court sentenced Peele to an aggregate term of six years imprisonment, to be served consecutively with his sentence in another cause. Peele now appeals.

## Discussion and Decision

## I. Speedy Trial

[10] Peele first argues that the trial court erroneously denied his request for discharge (styled as a "Writ of Habeas Corpus") after his trial was scheduled outside the seventy-day window set forth in Criminal Rule 4.

---

[6] The same day, Peele also demanded speedy trials in two other, unrelated criminal causes.

[11]     Criminal Rule 4(B)(1) states that if any defendant held in jail requests an early trial,

> he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. . . . Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

In this case, the trial court continued the original trial date because of court congestion. Peele does not challenge the legitimacy of the trial court's finding of congestion. Instead, he argues that the trial court erred because, upon continuing the trial due to congestion, the trial court did not simultaneously issue an order scheduling the new trial date.

[12]     Peele made his speedy trial demand on November 21, 2018. Therefore, the seventy-day clock would expire on January 30, 2019. Peele's trial was originally scheduled for December 18, 2018. On that date, the trial court scheduled a minute entry indicating that the trial would be postponed because of court congestion. Although the trial court did not set a new date at that time, it issued an order on January 10, 2019—approximately three weeks later— scheduling the case for trial on February 19, 2019.

[13]     It may be that, technically speaking, Criminal Rule 4(B)(1) requires that if the trial court continues a trial due to court congestion, it must simultaneously set

the case for trial within a reasonable time,[7] and we would encourage trial courts to abide by this portion of the rule. But in this case, we find that the approximate three-week delay between the finding of congestion and the setting of the new trial date is not unreasonable. Bolstering that conclusion is the fact that Peele does not argue that, had the new trial date been set in a timely fashion, there was an open and available setting for his trial before the seventy-day window closed. Therefore, we find that any violation of Criminal Rule 4(B)(1) was harmless and did not prejudice Peele. We decline to reverse on this basis.

## II. Admission of Evidence

[14] Next, Peele argues that the trial court erroneously admitted the deposition of a forensic scientist and statements made by Pollard to Officer Allen into evidence. According to Peele, the admission of this evidence violated his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution.

[15] We will reverse a trial court's ruling on the admissibility of evidence only if the decision is clearly against the logic and effect of the facts and circumstances or when the trial court has misinterpreted the law. *J.K. v. State*, 8 N.E.3d 222, 228 (Ind. Ct. App. 2014). But when a defendant claims that a constitutional

---

[7] Peele does not argue that the rescheduled trial date, which was a mere twenty days past the seventy-day window, was unreasonable.

violation has resulted from the admission of evidence, the standard of review is de novo. *Carr v. State*, 106 N.E.3d 546, 552 (Ind. Ct. App. 2018), *trans. denied*.

[16] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This amendment prohibits the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004).

## A.  Deposition

[17] On February 7, 2019, the State filed a motion for leave to take the deposition of forensic scientist Rebecca Nickless in lieu of live testimony. The trial court held a hearing on the motion, and at the hearing, the State informed the trial court that Nickless would be out of state during the scheduled trial date and would, therefore, be unavailable for live testimony. Peele, who was pro se at the time, told the trial court that he had no objection to the State's request. Consequently, the State deposed Nickless on February 11, 2019, in the courtroom. Peele was present and, by that time, represented by a public defender, who was able to cross-examine Nickless. Then, when the State introduced Nickless's deposition at trial, Peele's attorney objected, arguing that there was no evidence that Nickless was unavailable.

[18] Because Peele assented to the deposition of Nickless in lieu of live testimony, he invited any error that occurred. *See C.T. v. Marion Cty. Dep't of Child Servs.*, 896

N.E.2d 571, 588 (Ind. Ct. App. 2008) (holding that the doctrine of invited error provides that a party may not take advantage of an error that he commits, invites, or which is the natural consequence of his own neglect). Moreover, Peele demonstrated that he understood what depositions were, he knew that he would have the chance to cross-examine Nickless, and he knew that he would be able to object during the deposition. S*ee Evans v. State*, 809 N.E.2d 338, 344 (Ind. Ct. App. 2004) (holding that pro se litigants are held to the same legal standards as licensed attorneys). Invited error is not reviewable on appeal. *C.T.*, 896 N.E.2d at 588; *see also Lane v. State*, 997 N.E.2d 83, 93 (Ind. Ct. App. 2013) (noting that a defendant can waive his Sixth Amendment right to confront witnesses). Indeed, it would be unfair for Peele to have informed the State and the trial court that he did not object to the admission of Nickless's deposition into evidence and then be allowed to ambush the State at trial with an objection to that same deposition.

[19] Furthermore, Peele—who was represented by counsel during the deposition— had the opportunity to, *and did*, cross-examine Nickless, and both he and his attorney were aware that the State intended to introduce the deposition at his trial. Tr. Ex. Vol. p. 15-42. Under these circumstances, we find no constitutional violation occurred when the trial court admitted the deposition into evidence.

## B. Pollard's Statements

[20] Next, Peele directs our attention to portions of Officer Allen's testimony. Specifically, Officer Allen testified that Pollard told the officer that "she was in the vehicle and when [Officer Allen] initiated [her] overhead lights and siren, she told [Peele] to stop . . . for me to pull over . . . . [S]he told [Officer Allen] she had said that multiple times." Tr. Vol. I p. 190. Pollard also told Officer Allen that Peele had told her, "no, I'm not stopping, we all have warrants," and that afterwards, Pollard decided to jump out of the vehicle. *Id.* Although Pollard was subpoenaed to testify at the trial, she did not appear and did not testify.

[21] Peele argues that by allowing Officer Allen to testify about Pollard's statements, the trial court violated his rights under the Confrontation Clause. He did not, however, object at trial to this testimony. As a result, he must show that its admission constituted fundamental error. A fundamental error is a blatant violation of basic principles that causes substantial harm and deprives the defendant of fundamental due process. *Benson v. State*, 762 N.E.2d 748, 755 (Ind. 2002). Put another way, the error must have been so egregious that the trial court was required to raise the issue on its own. *Id.*

[22] Even if we were to agree solely for argument's sake that the admission of this evidence was erroneous, we would find that the error was not fundamental. Peele argues that this testimony is the only evidence supporting his conviction

for criminal confinement and that without it, that conviction would have to be overturned. We disagree.

[23] To convict Peele of Level 6 felony criminal confinement, the State was required to prove beyond a reasonable doubt that Peele knowingly or intentionally confined Pollard without her consent. I.C. § 35-42-3-3(a). Aside from Pollard's statements, Officer Allen testified about her observations. Specifically, she testified that she saw Pollard jump out of a vehicle that was traveling at approximately twenty miles per hour and that Peele then drove over Pollard's ankle. A reasonable factfinder could infer from this evidence that Pollard wanted to exit the vehicle, Peele was not taking any steps to facilitate a safe exit, and Pollard was being confined to the vehicle against her will. In other words, even without the brief statements that Pollard made to Officer Allen, there is sufficient evidence supporting the confinement conviction. Therefore, even if the admission of those statements was erroneous, the error was harmless given the other evidence in the record.

## III. Sufficiency

[24] Finally, Peele argues that there is insufficient evidence supporting his conviction for Class A misdemeanor resisting law enforcement. When reviewing the sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the conviction and will neither assess witness credibility nor reweigh the evidence. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We will affirm unless no

reasonable factfinder could find the elements of the crime proved beyond a reasonable doubt. *Id.*

[25] Because of the phrasing of the charging information in this case, to convict Peele of Class A misdemeanor resisting law enforcement, the State was required to prove beyond a reasonable doubt that Peele forcibly resisted, obstructed, or interfered with a law enforcement officer while the officer was lawfully engaged in the execution of the officer's duties. I.C. § 35-44.1-3-1(a)(1). For unknown reasons, the State did not charge Peele with resisting law enforcement based on his flight from Officer Allen after she activated her lights and siren. I.C. § 35-44.1-3-1(a)(3). Therefore, resisting by flight is not at issue in this appeal.

[26] The State's theory of the case was that Peele resisted Officer Allen by refusing to obey her commands to show his hands. But our Supreme Court has held that a defendant's failure to present his hands for handcuffing—absent the use of force—does not constitute resisting law enforcement. *Graham v. State*, 903 N.E.2d 963, 965-66 (Ind. 2009) (reversing a resisting conviction where defendant refused requests to put his hands up and then refused to present officers his hands for handcuffing).

[27] In this case, while Peele refused multiple commands to show his hands and had to be tased twice before complying with Officer Allen, there is no evidence whatsoever that he used any force against the officer. The fact that Peele walked away does not support the conviction. *See Spangler v. State*, 607 N.E.2d

720, 724-25 (Ind. 1993) (reversing a resisting conviction where the defendant walked away from a police officer). Moreover, the mere fact that Peele moved his hands around in the vehicle and then underneath his body does not support the conviction. *See Ajabu v. State*, 704 N.E.2d 494, 495-96 (Ind. Ct. App. 1998) (reversing a resisting conviction where police officer tried to take a flag from Ajabu and he held onto the flag, twisting and turning it, and had to be dragged for eight to ten feet before letting it go because, while there was "some resistance," there was no evidence that the defendant had "acted forcibly").

[28] On appeal, the State makes the novel argument that, because Peele maintained constant eye contact with Officer Allen while reaching into the vehicle, a factfinder could infer that Peele was making "a visual showing of strength and a threat of violence" that would support a resisting conviction. *Pogue v. State*, 937 N.E.2d 1253, 1258 (Ind. Ct. App. 2010). We simply cannot conclude that the act of maintaining eye contact can elevate a defendant's actions to forcible resistance.

[29] We do not disagree that Peele's actions were menacing, nor do we question Officer Allen's precautionary measures of drawing her weapon and deploying her Taser. But the fact that a law enforcement officer was reasonably worried about the possibility that a suspect had a weapon does not automatically mean that the suspect was guilty of resisting law enforcement. Here, there is simply no evidence that Peele forcibly resisted, obstructed, or interfered with Officer Allen's investigation. Therefore, we reverse his conviction for Class A misdemeanor resisting law enforcement.

[30] The judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to (1) vacate the resisting law enforcement conviction and (2) amend his sentencing order to reflect the change.

Kirsch, J., and Crone, J., concur.