# FOR PUBLICATION

ATTORNEY FOR APPELLANT:

**ANDREW B. ARNETT**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

FILED

Apr 04 2013, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| EDWARD W. CLEMONS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 73A01-1207-CR-327 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE SHELBY CIRCUIT COURT
The Honorable Charles D. O'Connor, Judge
Cause No. 73C01-1008-FD-117

**April 4, 2013**

**OPINION – FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Edward Clemons (Clemons), appeals his conviction for Count I, possession of an animal for purposes of an animal fighting contest, a Class D felony, Ind. Code § 35-46-3-8; Count II, possession of animal fighting paraphernalia, a Class B misdemeanor, I.C. § 35-46-3-8.5; and Count III, promoting an animal fighting contest, a Class D felony, I.C. § 35-46-3-9.5.

We affirm.

## ISSUES

Clemons raises three issues on appeal, which we restate as:

(1) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Clemons' conviction for possession of an animal for purposes of an animal fighting contest as a Class D felony;

(2) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Clemons' conviction for possession of animal fighting paraphernalia as a Class B misdemeanor; and

(3) Whether the State presented sufficient evidence beyond a reasonable doubt to sustain Clemons' conviction for promoting an animal fighting contest as a Class D felony.

## FACTS AND PROCEDURAL HISTORY

John Goodwin (Goodwin) is the Director of Animal Cruelty Policy at the Humane Society of the United States. He investigates animal cruelty and works with law enforcement to eliminate animal fighting contests. His specialty is cockfighting – animal fighting contests in which two roosters, also called 'battle cocks' or 'gamefowl,' fight each other, often to the death. As part of his work, Goodwin reviews trade journals on cockfighting. Goodwin obtained a 2010 issue of Pit Games magazine, a cockfighting trade journal, which contained an article on Clemons entitled "The Breeder from Indiana." (State's Exh. No. 2).

The article noted that Clemons had been to the Philippines about twenty-five times over the last ten years and was a guest at the "World Slasher" cockfighting contest held there in January 2010. (State's Exh. No. 2). Clemons offered his views on breeding and its impact on producing successful battle cocks. Familiar with differences between American, Mexican, and Filipino cockfighting, Clemons gave advice on how to breed birds compatible with Filipino fighting styles, which require a less aggressive bird. "His bloodlines are reasonably priced at 1,000 dollars for a 6-month-old breeding trio [*i.e.*, two hens and one rooster]. This price already includes shipping to California." (State's Exh. No. 2). Although mentioning that cockfighting was illegal in Indiana and his insistence on obeying the law, Clemons bemoaned the activities of animal rights groups, deeming them "anti-human," rather than "pro-animal." (State's Exh. No. 2). The article featured pictures of Clemons posing with various breeds of roosters and with two persons renowned in the cockfighting world. Goodwin eventually called Clemons and expressed

3

an interest in purchasing battle cocks. Clemons told Goodwin what qualities were desirable in fighting roosters. Clemons said that he would sell his birds and that although cockfighting was a felony in Indiana, it was only a misdemeanor in Kentucky. Thereafter, Goodwin obtained an aerial photograph of Clemons' farm in Shelby County, Indiana, which depicted housing for roosters, including barrels, breeding cages, and fly cages.

The following week, Goodwin contacted John Bolin (Officer Bolin) from the Indiana Gaming Commission (IGC) and provided him with information gleaned from Clemons and the aerial map. On July 7, 2010, Officer Bolin conducted surveillance of Clemons' farm and confirmed what the aerial map had showed. Under the guise of purchasing a truck, Officer Bolin later contacted Clemons and arranged a meeting at Clemons' farm. There, Officer Bolin observed numerous roosters placed in individual cages or tethered to a barrel, which had a board on top with food and water. He noticed that a number of roosters were missing their 'wattles' (the fleshy protuberance at the throat) and 'combs' (the fleshy protuberance on the top of the head), and had shortened or removed spurs, the bone-like horn on their legs. Clemons told Officer Bolin that he used to be a 'cockfighter,' but now only sells, buys, and breeds roosters.

Officer Bolin obtained a search warrant and along with other IGC officers returned to Clemons' farm. There, they found several items indicating that Clemons ran a cockfighting operation. In addition to the individual cages and tethered stands, these included boxes used to transport roosters, a small workbench with a toolbox containing

4

grooming and surgical tools, some of which were stained with blood and had small bits of feathers on them. A long knife used in Filipino cockfighting as an attachment to the rooster's leg was found under the workbench in a coffee can. IGC officers also found medicines and vitamins with pictures of gamefowl on the label; numerous tags with Clemons' name on them; and magazines, videos, and instructional manuals on training battle cocks. One video depicted cockfighting and its operation and one document, issued by the American Gamefowl Society, that "basically told a person, that is running a [cockfighting] operation, what to say and what not to say when approached by law enforcement." (Transcript p. 82). Approximately 193 birds were identified on the farm, with a ratio of one rooster to two hens. Many roosters had been dubbed, meaning that their wattles and combs had been removed, and many had their spurs shortened. Fifty roosters were tethered to barrels. Officer Bolin also subpoenaed Clemons' cell phone records, including a list of calls and text messages. The text messages included Clemons' sale of gamefowl and preparation for shipping to the Philippines and a conversation between Clemons and associate regarding sales of gamefowl and information on a cockfighting contest in Kentucky, including entry fees, dates, and how winners are determined – "[o]ne lives, one doesn't." (Transcript p. 115).

Phillip Laux (Officer Laux), also from the IGC, interviewed Clemons while other officers executed the search warrant. Clemons told Officer Laux that he sold 20 adult birds a year to customers in the United States, Mexico, and the Philippines. Clemons used information from cockfights to determine which fowl to keep and raise. Although

5

Clemons insisted that he did not sell his birds to fight, he admitted that he had no control over how his customers used them. When asked whether he had any cockfighting paraphernalia, Clemons said no. IGC officers later brought the knife to Clemons, he identified the knife as his, and that it was a type of knife used in Filipino cockfights.

On August 10, 2010, the State filed an Information charging Clemons with Count I, possession of an animal for purposes of an animal fighting contest, a Class D felony, I.C. § 35-46-3-8; Count II, possession of animal fighting paraphernalia, a Class B misdemeanor, I.C. § 35-46-3-8.5; and Count III, promoting an animal fighting contest, a Class D felony, I.C. § 35-46-3-9.5. On August 24, 2011, Clemons filed an affidavit of religious beliefs with the trial court. According to Clemons, devotion to his religious beliefs required him to "breed, raise, and fight" and sacrifice gamefowl. (Appellant's App. p. 159). He also announced his intention to move to the Philippines following trial where he would advocate against "evil animal rights activists from being allowed in that country." (Appellant's App. p. 161).

On May 20-23, 2012, a jury trial was held, following which Clemons was found guilty as charged. On June 21, 2012, the trial court sentenced Clemons to fifteen months' each on Counts I and III and 180 days on Count II. All sentences were to run concurrently and suspended to probation, for an aggregate sentence of fifteen months of probation.

Clemons now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

I. *Standard of Review*

Clemons challenges the sufficiency of the evidence to support his convictions. Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Perez v. State*, 872 N.E.2d 208, 212-13 (Ind. Ct. App. 2007), *trans. denied*. We consider only the evidence most favorable to the verdict and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* at 213. Regarding circumstantial evidence, such evidence need not overcome every reasonable hypothesis of innocence. *Fuller v. State*, 674 N.E.2d 576, 578 (Ind. Ct. App. 1996). Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Perez*, 872 N.E.2d at 213.

II. *Possessing an Animal for an Animal Fighting Contest*

Clemons first argues that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for possessing an animal for the purpose of an animal fighting contest because there was no evidence that he participated in cockfighting. Ind. Code § 35-46-3-8 criminalizes the purchase or possession of animals "for the purpose of using the animal in an animal fighting contest." An animal fighting contest refers to an organized and intentional "conflict between two (2) or more animals." I.C. § 35-46-3-4. To convict Clemons, the State would need to prove beyond a

7

reasonable doubt that he knowingly or intentionally purchased or possessed an animal for the purpose of an animal fighting contest. *See* I.C. § 35-46-3-8.

The evidence overwhelmingly establishes that Clemons ran a cockfighting operation. Clemons admitted possession of the 193 birds found on his farm. The gender ratio was two or three roosters for every hen. Goodwin testified that this was indicative of a cockfighting operation. Several State witnesses testified that dubbing is a common practice in cockfighting as the wattles and combs bleed profusely when attacked. A majority of Clemons' roosters had been dubbed, yet none of his hens were dubbed. Approximately fifty roosters were tethered to cages with feed and water placed on top of barrels. Goodwin explained that food and water were kept at this height to condition the roosters for fighting. A number of roosters were found with shortened spurs thereby allowing for weapon to be fitted to their legs. Numerous medicines and dietary supplements were found which could be used to strengthen the birds. Finally, IGC officers found cockfighting magazines, training regimens, and grooming tools. In sum, all of the foregoing evidence was sufficient to sustain Clemons' conviction for possessing an animal for the purpose of using the animal in an animal fighting contest.

Clemons argues that there was no evidence that he actually participated in cockfighting and there was "no probative evidence that [he] had these animals on his farm to fight." (Appellant's Br. p. 13). This argument is disingenuous. Although attempting to pass himself off as merely a breeder, Clemons is an acknowledged "Christian cocker" whose duty in life is to "breed, to raise, and to fight" game fowl.

8

(Appellant's App. p. 159). The Pit Games magazine contained his advice for breeding champion battle cocks. He admitted selling birds to others, and admitted that he did not know what they would do with them. Clemons estimated that 95% of his birds sold to American customers were used for show, thereby implying that the remaining five percent were used for other purposes. Moreover, Clemons admitted that he had no show birds on his farm because an "absolutely perfect specimen" was required for a rooster to be a show bird. (Tr. p. 396).

Furthermore, when persons inquired about purchasing battle cocks, Clemons responded that he had brood stock and would sell them a rooster accompanied by two hens. Goodwin testified that Clemons' sale of battle tested cockfighting bloodlines by definition requires the use of birds that have engaged in cockfighting. Although Clemons explained that his birds were tethered to prevent them from attacking other birds, given medicines to restore health, and dubbed to protect the birds from cold water, these explanations are equally consistent with the grooming and training of battle cocks and operating a cockfighting operation. In sum, Clemons' arguments are simply requests to judge the credibility of the witnesses and reweigh the evidence, which we will not do. *See Perez*, 872 N.E.2d at 213.

### III. *Possession of Animal Fighting Paraphernalia*

Clemons next challenges his conviction for possession of animal fighting paraphernalia. Although he acknowledges ownership of the Filipino knife found on his

9

property, Clemons disputes that the State proved beyond a reasonable doubt that he possessed it with the intent to commit an animal fighting contest violation. We disagree.

Animal fighting paraphernalia includes equipment used to train or condition animals for participation in an animal fighting contest. I.C. § 35-46-3-4.3. Knowingly or intentionally possessing such paraphernalia with the intent to violate I.C. § 35-46-3-9 is a Class B misdemeanor. I.C. § 35-46-3-8.5. Pursuant to I.C. § 35-46-3-9, an animal fighting violation consists of the knowing or intentional (1) promotion or staging of an animal fighting contest; (2) use of an animal in an animal fighting contest; or (3) attendance at an animal fighting contest with an animal one's possession. *See T.J. v. State*, 932 N.E.2d 192, 193 (Ind. Ct. App. 2010). Thus, to convict Clemons, the State was required to show that Clemons knowingly or intentionally possessed the animal fighting paraphernalia with the intent to commit an animal fighting contest violation. *See* I.C. § 35-46-3-8.5.

Clemons argues that the evidence is insufficient to sustain his conviction because the State did not prove that he had the intent to violate I.C. § 35-46-3-9. Intent involves a person's state of mind, and the fact finder can "infer its existence from surrounding circumstances when determining whether the requisite intent exists." *Goodner v. State*, 685 N.E.2d 1058, 1062 (Ind. 1997). At trial, Clemons identified the knife as an article used in cockfighting contests and admitted that it was his. IGC officers also found numerous items on Clemons' property that Officer Bolin later testified were consistent with use in cockfighting. In addition to the Filipino knife, these included dubbing shears,

10

medicines and supplements, cockfighting training manuals, videos and periodicals, as well as exercise equipment. Although Clemons maintains that he had never intended to use the knife in a cockfight, it was reasonable for the jury to disbelieve him and infer that the knife and the other, numerous items of paraphernalia were in fact intended to be used in violation of I.C. § 35-46-3-9. We therefore affirm Clemons' conviction.

## IV. *Promoting an Animal Fighting Contest*

Finally, Clemons challenges the sufficiency of the evidence to support his conviction for promoting an animal fighting contest. He argues that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for promoting an animal fighting contest because he did not possess the Filipino knife with the requisite intent and there was no indication "that he was training any of these birds to participate in an animal fighting contest." (Appellant's Br. p. 16).

Under I.C. § 35-46-3-9.5, a person promotes an animal fighting contest if he: a) possesses animal fighting paraphernalia with the intent to violate I.C. § 35-46-3-9; and b) "possesses, harbors, or trains" an animal that bears scars, wounds, or injuries "consistent with participation in or training for an animal fighting contest." We have already concluded that Clemons possessed animal fighting paraphernalia with the intent to violate I.C. § 35-46-3-9. In addition, there is sufficient evidence to show that Clemons possessed, harbored, and trained roosters bearing scars, wounds, or injuries consistent with participation or training for an animal fighting contest.

IGC officers located several roosters with their spurs, wattles, and comb shortened or removed – all of which left a mark or scar on the bird. Dubbing is a common practice in cockfighting. Clemons, who treated his birds without the assistance of a veterinarian, had vitamins and medications he provided to the birds that "might be used in cockfighting" or that "have an application in cockfighting." (Tr. p. 395). Although Clemons points out that no treadmills, exercise wheels, or sparring equipment was found on the farm, the jury heard evidence on how the roosters were tethered to barrels and made to jump up to reach their food. In sum, Clemons has invited us to reweigh the evidence but we decline to do so. *See Perez*, 872 N.E.2d at 213. Here, there was evidence more than sufficient for the jury to conclude beyond a reasonable doubt that Clemons promoted an animal fighting contest.

## CONCLUSION

Based on the foregoing, we conclude that the State presented sufficient evidence to support Clemons' convictions for possession of an animal for purposes of an animal fighting contest, possession of animal fighting paraphernalia, and for promoting an animal fighting contest.

Affirmed.

BAKER, J. and BARNES, J. concur