FILED

Dec 04 2019, 9:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Tyler Helmond
Voyles Vaiana Lukemeyer Baldwin &
Webb
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Frank A. Negangard
Chief Deputy Attorney General

Stephen R. Creason
Angela Sanchez
Sarah J. Shores
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

David Kifer,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 4, 2019

Court of Appeals Case No.
19A-CR-1188

Appeal from the Vanderburgh
Circuit Court

The Honorable Michael J. Cox,
Magistrate

Trial Court Cause No. 82C01-
1903-F6-1559

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, David A. Kifer (Kifer), appeals his conviction for criminal trespass, as a Level 6 felony, Ind. Code § 35-43-2-2(b)(1).

We reverse.

# ISSUE

Kifer presents this court with two issues on appeal, one of which we find dispositive and which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to support Kifer's conviction for criminal trespass.

# FACTS AND PROCEDURAL HISTORY

On March 1, 2005, David Rector (Rector), the general manager for the Evansville Vanderburgh County Building Authority (Building Authority), mailed a letter to Kifer, alerting him to "[p]lease be advised that you are no longer permitted to be in the Civic Center Complex. This action is required in order to protect the safety of those who visit and work in the Civic Center Complex." (Transcript Vol. II, p. 63). The Civic Center Complex consists of three buildings and houses different government agencies, including the county courts, the police department, and the city and county administrative offices. On February 14, 2009, Kifer was sentenced in an unrelated case and the trial court, referencing the earlier ban, suggested that he contact the sheriff's office several days in advance if he needed to enter the building. The sheriff's office

would then provide him with an escort to the specific office that he needed to visit.

[5]     On March 4, 2019, Kifer arrived at the Civic Center Complex wanting to make a report at the police station. Kifer believed that he had just come "from a place where [his] life was threatened, knives were held on [him], and [he] managed to escape." (Tr. Vol. II, p. 108). Kifer entered the Civic Center Complex through the entrance closest to the police department. Two officers staffed the entrance and both of them knew Kifer and were aware that he was banned from the building. The officers did not ask him to leave, nor did an officer escort Kifer, and there is no evidence an escort request had been made. Kifer passed through the entrance's screening mechanisms and proceeded to the police department to make his report. After entering the police department and reporting the alleged crime, Kifer was placed under arrest.

[6]     On March 6, 2019, the State filed an Information, charging Kifer with criminal trespass, a Class A misdemeanor, which was enhanced to a Level 6 felony due to a prior trespass conviction. On April 12, 2019, the trial court conducted a bifurcated jury trial, at the close of which Kifer was found guilty of criminal trespass. He subsequently admitted to the prior conviction under the enhancement charge. On May 21, 2019, Kifer was sentenced to a two-year executed sentence at the Department of Correction.

[7]     Kifer now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

[8]　Kifer contends that the State failed to present sufficient evidence to support his criminal trespass conviction beyond a reasonable doubt. Our standard of review with regard to sufficiency claims is well-settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Clemons v. State*, 987 N.E.2d 92, 95 (Ind. Ct. App. 2013). We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id*. Circumstantial evidence alone is sufficient to support a conviction. *Sallee v. State*, 51 N.E.3d 130, 133 (Ind. 2016). Circumstantial evidence need not overcome every reasonable hypothesis of innocence. *Clemons*, 987 N.E.2d at 95. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id*.

[9]　To convict Kifer of criminal trespass as a Class A misdemeanor, the State was required to establish that Kifer, not having a contractual interest in the property, knowingly or intentionally entered the real property of the Building Authority after having been denied entry by the Building Authority's agent. *See* I.C. § 35-43-2-2. An order to leave or remain away is sufficient if made by means of personal communication, oral or written. I.C. § 35-43-2-2(c)(1). Kifer claims

that the evidence is insufficient to show that he entered the Civic Center Complex after being denied entry by the Building Authority or its agent.

[10] Because the State presented evidence that Rector acted as the Building Authority's agent, we must consider the law of agency. This court recently described the elements necessary to establish an actual agency relationship:

> Agency is a relationship resulting from the manifestation of consent by one party to another that the latter will act as an agent for the former. To establish an actual agency relationship, three elements must be shown: (1) manifestation of consent by the principal, (2) acceptance of authority by the agent; and (3) control exerted by the principal over the agent. These elements may be proven by circumstantial evidence, and there is no requirement that the agent's authority to act be in writing.

*Demming v. Underwood*, 943 N.E.2d 878, 883 (Ind. Ct. App. 2011), *reh'g denied, trans. denied* (citations omitted). One who asserts that there was an agency relationship has the burden of proving its existence. *Smith v. Brown*, 778 N.E.2d 490, 495 (Ind. Ct. App. 2002).

[11] In *Glispie v. State*, 955 N.E.2d 819, 821 (Ind. Ct. App. 2011), *reh'g denied*, defendant was charged with criminal trespass. The officer testified that he had previously given the defendant oral and written warnings not to enter the business's property. *Id*. at 822. The only evidence presented at trial of the officer's status as the business's agent was his own testimony that he "could act as an agent of the property." *Id.* We held that "[m]ore is required" because

"[i]t is a well-established rule that agency cannot be proven by the declaration of the agent alone." *Id.*

[12] In our most recent pronouncement to date, *Saylor v. State*, -- N.E.3d --- (Ind. Ct. App. Nov. 13, 2019), we distinguished *Glispie* and concluded that the State had satisfied its burden of establishing the existence of an agency relationship. In *Saylor,* the apartment complex's agent testified that the complex had "asked" the agent "to take action" and "to ban [Saylor] from the [] property." *Id.* The agent had verbally informed Saylor that he was banned from the property and that if he returned, he would be arrested. *Id.* Referencing *Glispie*, we concluded that the agent's explicit testimony of this manifestation of consent by the apartment complex was sufficient to establish the agency prong of the criminal trespass charge. *Id.*

[13] We find the current situation to be more analogous to *Glispie*. At trial, Rector testified that in his capacity of general manager of the Building Authority he has "the authority to trespass people."[1] (Tr. Vol. II, pp. 61-62). As the agent's own statement that he could act as an agent is insufficient, "more is required." *See Glispie*, 955 N.E.2d at 821. Rector clarified that the Building Authority owns the building and leases the offices to the city and county. He banned Kifer after being "notified by judicial officers, law enforcement officials, elected

---

[1] Rector and the State also refer to I.C. Ch. 36-9-13 as the basis for his authority to ban people. However, I.C. Ch. 36-9-13 merely describes the County Building Authority as a separate municipal cooperation but lacks any references to a statutory basis to ban individuals from the building separate and distinct from the general criminal trespass statute.

department heads[.]" (Tr. Vol. II, p. 62). However, as Rector is the general manager employed by the Building Authority, he is not the agent of judicial officers, law enforcement officials, or elected department heads and therefore cannot derive his authority from them, absent a specific court order. *See* I.C. § 36-9-13-22 (13) (stating that the board of directors of the Building Authority employs [] managers [] necessary for the proper operation of [] the government buildings). Accordingly, the State did not carry its burden of proof.

[14] Furthermore, as an issue of first impression, Kifer contends that an agent cannot ban a person forever and permanently from a public building. The parties did not cite any authority, nor did our independent research disclose any precedential jurisprudence on the issue. As a persuasive precedent, we note that the Alaska Court of Appeals addressed this specific question in *Turney v. State*, 922 P.2d 283 (Ak. Ct. App. 1996). Turney was a jury nullification protester, and the court administrator hand-delivered a letter to him on May 9, 1994, indicating that he was welcome to enter the courthouse to peaceably conduct court business or to observe court proceedings, but that he was prohibited from entering or remaining on court property to engage in protest activities. *Id.* at 285. Approximately two months later, Turney returned to protest. *Id.* The police interfered and asked him to leave, which he did. *Id.* Turney was charged with and convicted of criminal trespass. *Id.* In reversing Turney's conviction, the Alaska court discussed *Johnson*, a case originating from Lousiana. *Id.* at 287; *State v. Johnson*, 381 So.2d 498 (La. 1980). In *Johnson*, Johnson was banned from a public bus terminal. When he returned, he was

arrested and convicted. As cited in *Turney*, the Louisiana court in *Johnson* decided that "it is patently unreasonable [to construe the trespass statute to allow] a citizen with peaceful intent [to] be permanently and perpetually barred from the premises of a public transportation facility[.]" *Turney*, 922 P.2d at 287. Relying on the *Johnson* rationale, the *Turney* court concluded that the Alaska trespass statute is "a general statute which provides that a person may not remain on property after being lawfully ordered to leave. [] [T]his type of statute is generally construed not to grant officials the authority to permanently ban people from public facilities. [] [We] hold that this statute did not authorize the Area Court Administrator to permanently ban Turney from the courthouse property." *Id.* at 288.

[15] Indiana's trespass statute is likewise a general statute which provides that a person cannot knowingly or intentionally enter real property after having been denied entry by the property owner's agent. *See* I.C. § 35-43-2-2. While Rector's letter, dated March 1, 2005, banned Kifer from the property, it purported to operate as a perpetual ban, advising that Kifer was "no longer permitted to be in the Civic Center Complex." (Tr. Vol. II, p. 63). Approximately fourteen years later, Kifer entered the Civic Center Complex to report a crime in which he was the alleged victim. Kifer was not acting in an offensive, abusive, or obstreperous manner. It was only after he was allowed to enter without any problems and after he had reported his perceived crime, that Kifer was arrested on the alleged authority of a fourteen-year old letter. The police station is a facility devoted to serving and protecting the public at large,

including Kifer. We find it unreasonable to construe the trespass statute to allow a citizen to be permanently and perpetually banned from the premises of a public building intended to serve the community and which housed several facilities that citizens need to access intermittently in the operation of daily life.[2, 3]

In an alternative argument, the State, in a single paragraph, contends that Kifer is still guilty of criminal trespass because "the State need not allege or prove that a person has been 'lawfully' denied entry onto the property of another, as the lawfulness of the denial is not an element of the offense." (Appellee's Br., p. 11). However, the State's argument is misplaced. While we agree that the State must "not allege or prove that a person has been 'lawfully' denied entry onto the property of another," the lawfulness relates to the 'entry' element of the charge—which was never disputed by Kifer—not to the person authorized to institute the ban or the temporal element thereof. *See Frink v. State*, 52 N.E.3d 842, 847 (Ind. Ct. App. 2016).

---

[2] The State informs this court that Kifer was reminded of the ban during a sentencing hearing for an unrelated conviction less than one month prior to his March 4, 2019 arrest. He was advised to call the sheriff's department beforehand if he needed to access one of the facilities within the Civic Center Complex. This prior notification requirement appears to be not only a vague elaboration of Rector's written ban, but the State fails to present evidence that this amendment to the general, outright ban was given by an authorized agent and has a legitimate basis.

[3] Our opinion today does not decide that an individual cannot be banned from a public building; rather, we conclude that this decision has to be communicated by the proper authorized person and cannot be in place permanently without anything more. We decline to address whether a permanent ban can be in place with the specification that access to the building is possible upon advance notice or by request for an escort at the entrance.

In sum, we conclude that the State did not present sufficient evidence beyond a reasonable doubt that Rector was authorized by the Building Authority to permanently ban Kifer from the Civic Center Complex, a public building.

# CONCLUSION

Based on the foregoing, we conclude that the State failed to present sufficient evidence beyond a reasonable doubt to support Kifer's conviction for criminal trespass.

Reversed.

Baker, J. and Brown, J. concur