

FILED

Jan 30 2020, 10:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mario Garcia
Brattain Minnix Garcia
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano-Colon
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Charles R. Tyson,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

January 30, 2020

Court of Appeals Case No.
19A-CR-1813

Appeal from the Henry Circuit
Court

The Honorable David L. McCord,
Judge

Trial Court Cause No.
33C03-1707-CM-652

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Charles Tyson (Tyson), appeals his conviction for resisting law enforcement, a Class A misdemeanor, Ind. Code § 35-44.1-3-1(a)(1).

We affirm.

# ISSUE

Tyson presents one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to convict Tyson of resisting law enforcement.

# FACTS AND PROCEDURAL HISTORY

At approximately 3:00 a.m. on July 14, 2017, New Castle police officer Brandy Pierce (Officer Pierce) was traveling northbound in a marked police vehicle on South 15th Street in New Castle, Indiana. Officer Pierce observed Tyson walking eastbound on a cross street. As Officer Pierce passed by Tyson, Tyson looked at her vehicle, turned around, and went the other way. When Officer Pierce passed the intersection, she observed Tyson turning back around and continuing to walk east. Tyson appeared to sway and "he stumbled or tripped" as he turned. (Transcript p. 39). Officer Pierce became suspicious as it "seemed like [Tyson] was trying to avoid [the officer] when he saw the marked patrol car." (Tr. p. 39). Officer Pierce turned her vehicle around and approached Tyson.

[5] At the corner of Shroyer and 15th Street, Officer Pierce initiated contact with Tyson. She could smell an odor of alcohol and marijuana. Tyson "was uncooperative, refusing to stop, continuously having his hands in his pockets, backing away, telling me that he had done nothing wrong, that he did not have to stop." (Tr. p. 39). As the situation appeared to escalate, Officer Pierce requested backup. Tyson persisted in keeping his hands in his pockets and Officer Pierce "could see that there were items in his pockets." (Tr. p. 39). Officer Pierce tried to explain that Tyson could not keep his hands in his pockets and to keep his hands where she could see them. "He was warned repeatedly if he didn't keep his hands where [Officer Pierce] could see them, that he would be tased." (Tr. p. 40). Tyson turned around, his hands still hidden from view, and began climbing steps to a house, continuing to disregard Officer Pierce's commands. Officer Pierce administered her taser, which caused Tyson to fall down the steps. When the taser stopped, Tyson was again belligerent and uncooperative, and refused to put his hands behind his back. Officer Pierce administered her taser a second time and was able to handcuff Tyson. He was subsequently placed under arrest.

[6] On July 14, 2017, the State filed an Information, charging Tyson with resisting law enforcement, a Class A misdemeanor; public intoxication, a Class B misdemeanor; and possession of paraphernalia, a Class C misdemeanor. Following a bench trial, Tyson was found guilty of resisting law enforcement and not guilty of the remaining charges.

[7] Tyson now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

[8] Tyson contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for resisting law enforcement. Our standard of review with regard to sufficiency claims is well-settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Clemons v. State*, 987 N.E.2d 92, 95 (Ind. Ct. App. 2013). We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id*. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id*.

[9] To convict Tyson of resisting law enforcement, the State was required to establish that Tyson "knowingly or intentionally . . . forcibly resiste[d], obstruct[ed], or interfere[d] with a law enforcement officer . . . while the officer [was] lawfully engaged in the execution of the officer's duties[.]" *See* I.C. § 35-44.1-3-1(a)(1). The term "forcibly" is a distinct element of the offense that modifies all three verbs "resists, obstructs, or interferes." *See K.W. v. State*, 984 N.E.2d 610, 612 (Ind. 2013). It means "something more than mere action." *Spangler v. State*, 607 N.E.2d 720, 724 (Ind. 1993). "[O]ne 'forcibly resists' law enforcement when strong, powerful, violent means are used to evade a law

enforcement official's rightful exercise of his or her duties." *Id.* at 723. "[A]ny action to resist must be done with force in order to violate this statute. It is error as a matter of law to conclude that 'forcibly resists' includes all actions that are not passive." *Id.* at 724.

[10] But even so, "the statute does not demand complete passivity." *K.W.*, 984 N.E.2d at 612. In *Graham*, our supreme court clarified that "[t]he force involved need not rise to the level of mayhem." *Graham v. State*, 903 N.E.2d 963, 966 (Ind. 2009). In fact, even a very modest level of resistance might support the offense. *Id.* at 965 ("'stiffening' of one's arms when an officer grabs hold to position them for cuffing would suffice."). Furthermore, our supreme court has "never held that actual physical contact between the defendant and the officer [is] required to sustain a conviction for resisting law enforcement." *Walker v. State*, 998 N.E.2d 724, 727 (Ind. 2013).

[11] In fact, as noted in *Walker*, from the beginning our supreme court has stated the opposite. *Id.* *See Spangler*, 607 N.E.2d at 724 (noting "no movement or threatening gesture made in the direction of the official"); *Price v. State*, 622 N.E.2d 954, 963 n.14 (Ind. 1993) (citing *Spangler* for the proposition that "an individual who directs strength, power, or violence towards police officers or who makes a threatening gesture or movement in their direction," may be charged with resisting law enforcement.) And this notion has been applied to affirm convictions when a defendant makes such a threatening gesture or movement, or otherwise presents an imminent danger of bodily injury. *See Pogue v. State*, 937 N.E.2d 1253, 1258 (Ind. Ct. App. 2010) (display of box cutter

and refusal to drop it "amounted to a visual showing of strength and a threat of violence" sufficient to sustain conviction), *trans. denied*; *Stansberry v. State*, 954 N.E.2d 507, 511-12 (Ind. Ct. App. 2011) (vacating conviction for "attempted" resisting law enforcement when defendant charged at officer and had to be pepper-sprayed, but citing *Pogue* as holding that "merely showing strength and a threat of violence is sufficient to prove forcible resistance, obstruction, or interference.") Accordingly, "not every passive—or even active—response to a police officer constitutes the offense of resisting law enforcement, even when that response compels the officer to use force." *Walker*, 998 N.E.2d at 727. Instead, a person "forcibly" resists, obstructs, or interferes with a police officer when he or she uses strong, powerful, violent means to impede an officer in the lawful execution of his or her duties. *Id*. The statute does not solely contemplate actual physical contact but can also be satisfied by an active threat of such strength, power, or violence when that threat impedes the officer's ability to lawfully execute his or her duties. *Id*.

[12]     In the present case, the trial court, as the trier of fact, reasonably concluded that Tyson's actions amounted to an active threat that impeded Officer Pierce's ability to lawfully execute her duties. Officer Pierce repeatedly ordered Tyson to stop and keep his hands out of his pockets. Despite these commands, Tyson refused to comply. Officer Pierce was concerned about Tyson's refusal to keep his hands visible as she did not know what was in his pockets. She observed "things in his pockets that he continued to reach[.]" (Tr. p. 25). She perceived

these objects as dangerous because in her experience, "[i]t only takes a split second for them to remove it and try to hurt you with it." (Tr. p. 40).

[13] In an attempt to persuade this court that the State failed to carry its burden of proof, Tyson likens his situation to *Spangler*, in which our supreme court concluded that no forcible resistance was present. *Spangler*, 607 N.E.2d at 724. In *Spangler*, a sheriff's deputy attempted to serve the defendant with process. *Id.* at 721. Spangler refused to accept the papers, turned away from the officer, and walked away despite the officer's order to return. *Id.* While the *Spangler* court noted that the element of resistance was satisfied, Spangler's action did not amount to forcible resistance. However, unlike the situation in *Spangler*, Tyson did not merely walk away; rather, Tyson's refusal to take his hands out of his pockets, which clearly contained items, amounted to a threatening gesture presenting an imminent danger of bodily injury to Officer Pierce. *See A.A. v. State*, 29 N.E.3d 1277, 1281 (Ind. Ct. App. 2015). Accordingly, we affirm Tyson's conviction for resisting law enforcement.

# CONCLUSION

[14] Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to sustain Tyson's conviction for resisting law enforcement.

[15] Affirmed.

[16] Baker, J. and Brown, J. concur