## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 06 2020, 9:05 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

APPELLANT PRO SE

Pierre D. Thomas, Jr.
Evansville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Myriam Serrano-Colon
Deputy Attorney General

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Pierre Thomas, Jr., <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 6, 2020 <br><br> Court of Appeals Case No. 20A-CR-195 <br><br> Appeal from the Vanderburgh Circuit Court <br><br> The Honorable David D. Kiely, Judge <br><br> The Honorable Gary J. Schutte, Magistrate <br><br> Trial Court Cause No. 82C01-1910-F6-7274 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Pierre Thomas (Thomas), appeals his conviction for intimidation, a Level 6 felony, Ind. Code § 35-45-2-1(b).

We affirm.

# ISSUE

Thomas presents one issue on appeal, which we restate as: Whether the State presented sufficient evidence beyond a reasonable doubt to support Thomas' conviction for intimidation.

# FACTS AND PROCEDURAL HISTORY

In October of 2019, Thomas and A.Y. were involved in a romantic relationship. On October 14, 2019, Thomas and A.Y. visited A.Y.'s aunt and cousin at their home. They started to argue because Thomas believed that A.Y. had previously been in a relationship with another visitor at the residence. Thomas began scrolling through A.Y.'s text messages on her cellular phone looking for evidence of the relationship. When A.Y. demanded her phone back, Thomas snapped it in half and "got physical" with her. (Transcript Vol. II, p. 33). Following the assault, A.Y. called the police.

Evansville Police Department Officers Paul Klein and Nathan VanCleave (Officer VanCleave) responded to the call. After investigating the incident, Thomas was detained and Officer VanCleave transported Thomas to jail. Although Thomas had been "fairly cooperative[,] but loud" when the officers

initially questioned him, he became "argumentative and combative," calling Officer VanCleave "a bitch, a fag, a hoe, like motherfucking police" in the squad car during the ten-minute drive to jail. (Tr. Vol. II, pp. 77-78). During the ride to jail, Thomas also informed Officer VanCleave that the officer "didn't understand where [Thomas] was coming from" and for Officer VanCleave "to understand maybe something should happen to [him] . . . and his family." (Tr. Vol. II, p. 78). When asked if Thomas was threatening Officer VanCleave, Thomas responded, "Yes, that is a threat." (Tr. Vol. II, p. 78). Thomas continued to repeat this threat in the squad car.

[6]     As they arrived at the jail and while they made their way into the building, Thomas repeatedly called Officer VanCleave names and became "increasingly combative and aggressive." (Tr. Vol. II, p. 79). Thomas continued to make threats to Officer VanCleave and his family. Thomas hurled, "I don't give two fucks. Put your hands on me, bitch. Crooked ass fag. Fuck you bitch . . . I know you fixing to put your hands on me. Come on bitch, why don't you just take the cuffs off so I can hit you back, bitch." (Tr. Vol. II, p. 82). Though Thomas was in handcuffs, he was walking around. Due to his aggressive behavior, Thomas was placed in a restraining chair for the officers' protection. While Officer VanCleave completed the paperwork, Thomas was placed in a holding cell, where he continued to shout at Officer VanCleave.

> [Thomas] said that there needed to be a purge. He would start exclaiming my name, VanCleave. I know you're listening. He would say he was going to – he said he hoped my house would get shot up. He hoped that somebody would come and steal my

kid's bike. He said he was going to fuck me up. He said fuck my wife. Fuck my kids. He said when my kids would be trick-or-treating two weeks from then he said he hoped somebody would come and beat them up, knock my kids out.

(Tr. Vol. II, p. 86). Officer VanCleave considered Thomas' statements to be more than just idle threats. Thomas "repeatedly said his name out loud" and told Officer VanCleave that he would be released from jail soon. (Tr. Vol. II, p. 88). Thomas informed the officer that "after he would get out of jail, he could come fuck [Officer VanCleave] up." (Tr. Vol. II, p. 90). Other officers at the jail observed the incident. The officers heard Thomas tell Officer VanCleave to "take his handcuffs off to beat his ass" and that Thomas hoped the officer's family would perish in a house fire. (Tr. Vol. II, p. 99). They heard Thomas make several statements about "how he wanted to hurt Officer VanCleave," and also "threatened harm to Officer VanCleave and his family." (Tr. Vol. II, p. 106).

[7] On October 16, 2019, the State filed an Information, charging Thomas with Count I, domestic battery, a Level 6 felony; Count II, intimidation, a Level 6 felony; and Count III, criminal mischief, a Class B misdemeanor. On December 2, 2019, the trial court conducted a jury trial. At the close of the evidence, the jury found Thomas guilty of intimidation and not guilty of domestic battery and criminal mischief. On December 27, 2019, the trial court sentenced Thomas to a term of eighteen months at the Department of Correction.

[8] Thomas now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

[9] Thomas contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for intimidation. Our standard of review with regard to sufficiency claims is well-settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Clemons v. State*, 987 N.E.2d 92, 95 (Ind. Ct. App. 2013). We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

[10] To convict Thomas of intimidation, the State was required to establish that Thomas communicated a threat to Officer VanCleave "with the intent that [Officer VanCleave] be placed in fear of retaliation for a prior lawful act" and that the "threat [was] communicated because of [Officer VanCleave's] occupation, profession, [or] employment status." I.C. § 35-45-2-1(b). Thomas' sole contention focuses on the characterization of the perceived threat. He maintains that he was not expressing a threat, but rather was conveying "sinister hopes." (Appellant's Br. p. 8).

"Threat" is statutorily defined as "an expression, by words or action, of an intention to unlawfully injure the person threatened or another person." I.C. § 35-45-2-1-(d)(1). Here, the record is replete with references to Thomas' statements intending to injure Officer VanCleave and his family. Although several statements might arguably be categorized as aspirational, Thomas clearly admitted to the officer that his expressions should be viewed as threats. He verbalized that he wanted to hurt Officer VanCleave and warned him that "after he would get out of jail, he could come fuck [Officer VanCleave] up." (Tr. Vol. II, p. 90). The fact that Thomas was handcuffed while making these threats is unavailing. *See Holloway v. State*, 51 N.E.3d 376, 378 (Ind. Ct. App. 2016) (holding that sufficient evidence supported a conviction for felony intimidation, although Holloway was handcuffed and incapable of carrying out his stated intent to injure the officer). Accordingly, as Thomas' argument amounts to nothing more than an invitation to reweigh the evidence, which we decline, we affirm the trial court's judgment.

## CONCLUSION

Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to support Thomas' conviction for intimidation.

Affirmed.

Mathias, J. and Tavitas, J. concur