# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 22 2020, 10:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert P. Magrath
Alcorn Sage Schwartz & Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

James T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

Jacob Hart,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 22, 2020

Court of Appeals Case No.
20A-CR-16

Appeal from the Dearborn Circuit Court

The Honorable James D. Humphrey, Judge

Trial Court Cause No.
15C01-1810-F3-15

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Defendant, Jacob Hart (Hart), appeals his conviction for dealing in methamphetamine, a Level 3 felony, Ind. Code § 35-48-4-1.1(a)(2); maintaining a common nuisance, a Level 6 felony, I.C. § 35-49-5-1-5(c); and possession of a firearm by a serious violent felon, a Level 4 felony, I.C. § 35-47-4-5(c).

We affirm.

# ISSUES

Hart presents three issues on appeal, which we consolidate and restate as:

> (1) Whether the State presented sufficient evidence beyond a reasonable doubt to support Hart's conviction for dealing in methamphetamine and possession of a firearm by a serious violent felon; and
>
> (2) Whether Hart's sentence is inappropriate in light of the nature of the offenses and his character.

# FACTS AND PROCEDURAL HISTORY

Hart and Zion Burnett (Burnett) entered in a romantic relationship in July of 2018. In September of 2018, Burnett met Rebecca Hunsucker (Hunsucker), who purchased methamphetamine from Hart for her own use. Hunsucker had two children: a middle-schooler and a child with special needs. By mid-September Hunsucker asked Hart and Burnett to live in her home to help watch her children while she was at work.

[5]     While living in Hunsucker's residence, Burnett noticed that Hart regularly hosted guests, taking them into the bathroom privately where no one else could see them. Whenever Burnett attempted to enter the bathroom while Hart had visitors, Hart would become angry and yell at her. When asked about these meetings, Hart would explain that he was providing methamphetamine to help his guests with withdrawal symptoms. During this same time, Burnett also noticed Hart setting up a scale, weighing out smaller quantities of methamphetamine, and putting them in baggies. She videotaped Hart, who was unemployed at the time, counting out currency and waiving a gun. Hart showed Burnett how the gun worked and explained to her that he was going to sell the firearm.

[6]     On the morning of September 28, 2018, Hart, Hart's brother, and another guest were in Hunsucker's kitchen "baking marijuana butter" on the stove, causing a strong odor of marijuana to permeate the entire residence. (Transcript Vol. II, p. 103). When Hunsucker's daughter arrived at middle school that morning, she reeked of marijuana, causing the resource officer to alert the Lawrenceburg Police Department with the request to perform a welfare check on the special needs child in Hunsucker's residence, which was located 67.2 feet from the elementary school where children were playing outside during recess.

[7]     When police officers arrived within five feet of Hunsucker's residence they could smell the marijuana emanating from inside the home. The officers knocked and Hart's brother opened the door. After entering the residence, the officers secured the scene while applying and receiving approval for a search

warrant. During their search of the house, officers located multiple bags of marijuana and a bag of methamphetamine inside a box of Newport cigarettes. They gathered digital scales and currency from Hart's room, as well as multiple packages of clear sandwich baggies, which contained methamphetamine. The officers also discovered paraphernalia, such as a pipe with residue, hollowed out ink pen tubes commonly used to inhale smoke from indirectly heated drugs, and aluminum foil. A search of Hart's cell phone revealed multiple videos, photographs, and other data, including a video of Hart waiving a gun. The officers also found a message from one of Hart's Facebook friends, requesting a "couple G's"—with "G" meaning a gram in drug slang. (Tr. Vol. II, p. 174).

[8] On October 1, 2018, the State filed an Information, charging Hart with Level 3 felony dealing in methamphetamine in an amount less than five grams in the presence of a child or in near proximity to a school; a Class A misdemeanor dealing in marijuana; a Level 6 felony maintaining a common nuisance; and a Class C misdemeanor possession of paraphernalia. The State amended the Information to include a Level 5 felony possession of marijuana; and a Level 4 felony possession of a firearm by a serious violent felon.

[9] On October 2, 2018, during the initial hearing in this cause, Hart informed the trial court with respect to the Level 3 felony dealing in methamphetamine:

> Anything that was found in that room, it's mine. Not
> [Burnett's], it's not hers. Everything in that room, it's mine.
> You can put that on paperwork. You guys can type that on the
> computers or whatever. You can write that . . . down.
> Everything is mine in that room.

(Tr. Vol. II, p. 191). Hart repeated the claim after being cautioned by the trial court, insisting that he would "take that fully to the chin," while advising the trial court that he was "guilty" and requesting that the court free "his people." (Tr. Vol. II, pp. 192, 193).

[10] On November 4, 2019, Hart's jury trial commenced. At the conclusion of the evidence, the jury found Hart guilty of dealing in methamphetamine, maintaining a common nuisance, possession of methamphetamine, and possession of a firearm by a serious violent felon. The jury found Hart not guilty of dealing in marijuana. On November 27, 2019, during the sentencing hearing, the trial court sentenced Hart to fourteen years executed for dealing in methamphetamine, to be served concurrently with the sentence imposed for maintaining a common nuisance, but consecutively to six years executed and four years suspended for illegal possession of a firearm by a serious violent felon, for an aggregate sentence of twenty-four years, with twenty years executed. The trial court vacated the conviction for possession of paraphernalia.

[11] Hart now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

## I. *Sufficiency of the Evidence*

[12] Hart contends that the State failed to present sufficient evidence beyond a reasonable doubt to sustain his conviction for dealing in methamphetamine and his possession of a firearm as a serious violent felon. Our standard of review

with regard to sufficiency claims is well-settled. In reviewing a sufficiency of the evidence claim, this court does not reweigh the evidence or judge the credibility of the witnesses. *Clemons v. State*, 987 N.E.2d 92, 95 (Ind. Ct. App. 2013). We consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. *Id.* Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense. *Id.*

### A. *Dealing in Methamphetamine*

[13]    To convict Hart of dealing in methamphetamine, a Level 3 felony, the State was required to establish that Hart dealt in methamphetamine of at least one gram but less than five grams in the physical presence of a child less than eighteen years of age or within five hundred feet of school property. I.C. § 35-48-4-1.1(a)(2)(A); -(d)(2). Hart contends that the State failed to carry its burden as Hart's "constructive possession" of "a little over two (2) grams of methamphetamine and the presence of a box of unused sandwich bags" is more indicative of drug use rather than of an intent to distribute methamphetamine. (Appellant's Br. p. 11).

[14]    As noted by the State, and we agree, Hart's challenge to the possession of methamphetamine as being constructive ignores his blatant admission of ownership during the preliminary hearing, which was entered into evidence during his trial, claiming that "anything that was found in that room, it's

mine." (Tr. Vol. II, p. 191). As such, Hart accepted ownership of the scales, the baggies, the currency, and the methamphetamine found in his room in Hunsucker's residence.

[15] In addition to the evidence establishing ownership, there is an abundance of evidence supporting Hart's conviction for the dealing element of the charge. Several witnesses testified at trial that they either saw Hart sell methamphetamine or they purchased the illegal substance from him. Hunsucker told the jury that she purchased methamphetamine from Hart on five to ten different occasions. She observed Hart weighing it out and packing the substance into smaller baggies. Trevor Adkins confirmed that he bought methamphetamine from Hart on at least ten occasions in quantities of anywhere from one to two grams at the time, at a cost of between thirty to fifty dollars per gram. Burnett informed the court that she observed Hart take visitors into the bathroom at Hunsucker's residence. When Burnett attempted to interrupt these private visits, Hart yelled at her and told her that he was helping the visitors with their withdrawal symptoms. She also videotaped Hart counting out currency at a time when he was unemployed. Moreover, within hours of his arrest, Hart received a message on his cell phone requesting a "couple of G's." (Tr. Vol. II, p. 172).

[16] Given all of this evidence, the jury could reasonably infer that Hart was not merely a methamphetamine user but also a dealer who intended to distribute methamphetamine. Therefore, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support Hart's dealing conviction.

## B. *Illegal Possession of Firearm by Serious Violent Felon*

[17] Hart was adjudicated a serious violent felon pursuant to Indiana Code section 35-47-4-5(c), which provides that "[a] serious violent felon who knowingly or intentionally possesses a firearm commits unlawful possession of a firearm by a serious violent felon." "Firearm" is defined as any weapon that is capable of expelling, designed to expel, or may readily be converted to expel a projectile by means of an explosion." I.C. § 35-47-1-5. Not challenging his status as a serious violent felon, Hart instead contends that law enforcement testimony was "far from unequivocal" that he possessed a firearm as statutorily defined. (Appellant's Br. p. 15). As no physical firearm was entered into evidence, Hart was convicted based on Burnett's video of him brandishing a firearm. Hart now argues that the officers could not positively identify the object in the video as a firearm.

[18] The record reflects that Detective Nicholas Beetz (Detective Beetz), positively identified the weapon as a firearm based on his twenty years of experience. Detective Beetz recognized the weapon to be a firearm based on its shape and special characteristics, such as the slide, the rails, the grip, and the striker firing system. He was able to confirm that the diameter of the barrel was consistent with the caliber of an ammunition round. After conducting further research, Detective Beetz was able to identify the firearm as a Browning .25 caliber. He excluded the possibility of the weapon to be a BB gun as it had every characteristic of a firearm.

[19] Although Hart had told Burnett that the weapon did not work because the magazine was broken, CSI and weapons systems expert Officer Steve Jackson (Officer Jackson) established that even with an inoperable magazine the firearm could still work by using a single round in the chamber with the slide closed. Officer Jackson opined that Hart was brandishing a real firearm and not a replica based on the carbon buildup which would be absent in a replica. Officer Jackson testified that he could identify the carbon accumulation from gunpowder between the back of the case and the weapon's breechface.

[20] Accordingly, based on the testimony of the two law enforcement witnesses, the jury could reasonably infer that Hart brandished a weapon that was capable of expelling a projectile by means of an explosion. *See* I.C. § 35-47-1-5. As such, we conclude that the State presented sufficient evidence beyond a reasonable doubt to support Hart's adjudication as a serious violent felon in possession of a firearm.

## II. *Appropriateness of the Sentence*

[21] Hart requests that we independently review the appropriateness of his sentence. "Even when a trial court imposes a sentence within its discretion, the Indiana Constitution authorizes independent appellate review and revision of this sentencing decision." *Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019). Thus, we may alter a sentence if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offense and the character of the offender. *Id*. The principal role of such review is to

attempt to leaven the outliers. *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008). The defendant bears the burden to persuade the reviewing court that the sentence imposed is inappropriate. *Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

[22]   Hart's aggregate twenty-four year sentence is the combined result of the trial court's imposition of fourteen years executed for dealing in methamphetamine, a Level 3 felony, and a consecutive six years executed, with four years suspended, for illegal possession of a firearm by a serious violent felon, a Level 4 felony. "A person who commits a Level 3 felony [] shall be imprisoned for a fixed term of between three (3) and sixteen (16) years, with the advisory sentence being nine (9) years." I.C. § 35-50-2-5. "A person who commits a Level 4 felony shall be imprisoned for a fixed term of between two (2) and twelve (12) years, with the advisory sentence being six (6) years." I.C. § 35-50-2-5.5. Accordingly, the trial court imposed a sentence just shy of the maximum sentencing range for the Level 3 felony and the maximum for the Level 4 felony.

[23]   With respect to the nature of the crime, we do not turn a blind eye to "facts of the incident that brought the defendant before" us or the "nature and circumstances of the crime as well as the manner in which the crime is committed." *Bethea v. State*, 893 N.E.2d 1134, 1145 (Ind. 2013). Hart was dealing methamphetamine out of a residence in which he was invited as a guest and entrusted with the care of two minor children. While baking marijuana butter, he filled the home with the overwhelming stench of marijuana and

endangered the child with special needs who was still in the home. The smell was so pungent that when the middle school age child reached school, the resource officer notified the authorities. Hart had several customers that came to Hunsucker's residence to purchase methamphetamine from Hart.

[24] Likewise, Hart's character does not warrant a downward revision of his sentence. A defendant's willingness to continue committing crimes is relevant for analysis of his character under Appellate Rule 7(B). *Garcia v. State*, 47 N.E. 3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*. Independent of the current conviction, Hart's criminal involvement includes juvenile detention, violation and revocation of probation, jail or prison discipline, a battery offense, and both felony and misdemeanor crimes. His criminal history commences in 2013, when he was a juvenile, with a delinquency adjudication of battery resulting in serious bodily injury. During his suspension, he tested positive for drugs and was subject to modification. As a juvenile, he was also adjudicated delinquent for criminal trespass. After he became an adult, he incurred a conviction for battery resulting in serious bodily injury to a law enforcement officer in 2018, in a case arising out of seven charges. Hart received a largely suspended sentence for the serious bodily injury conviction and violated his probation within four months. In addition to these offenses, he has been held in contempt of court. While awaiting trial for the current charges in the Dearborn County Law Enforcement Center, Hart was involved in approximately eleven jail incidents, including fighting with inmates, threats to jail officers, sexual gestures to an inmate, and striking and injuring a jail officer.

Besides his criminal history, Hart's character clearly speaks to his disregard for others and the criminal justice system. While Hart contends that his "conduct was accompanied by restraint, regard, and lack of brutality," it cannot be ignored that Hart dealt methamphetamine out of Hunsucker's residence thereby abusing her hospitality and endangering her two minor children and children playing at a nearby school. (Appellant's Br. p. 19). Accordingly, in light of the nature of the offense and Hart's character, we cannot conclude that the imposed sentence is inappropriate.

## CONCLUSION

Based on the foregoing, we hold that the State presented sufficient evidence beyond a reasonable doubt to support Hart's conviction for dealing in methamphetamine and possession of a firearm by a serious violent felon; and Hart's sentence is not inappropriate in light of the nature of the offense and his character.

Affirmed.

Mathias, J. and Tavitas, J. concur